[No. 19560-7-II.    Division Two.    August 28, 1997.]

DIANA WILSON, *Respondent*, v. GARY C. HORSLEY, *Appellant.*

*Kurt A. Anagnostou*, for appellant.

*Craig W. Weston* and *Walstead, Mertsching, Husemoen, Donaldson & Barlow, P.S.*, for respondent.

HUNT, J. — After mandatory arbitration and setting a trial de novo, Gary Horsley sought leave to amend his answer to a complaint for damages arising from an assault. On appeal Horsley argues that the trial court erred

in denying his motions for leave to amend and for a jury trial. We affirm.

## FACTS

On September 17, 1992, Gary Horsley assaulted Diana Wilson, causing permanent injury to her hand. On August 16, 1993, in Cowlitz County Superior Court, Wilson filed a complaint against Horsley for civil assault. Horsley filed his handwritten answer pro se; it stated:

> I am not really sure what she is talking about. The only instance I can think of is when on one of her drunks she smacked me in the back of the head and hurt her finger, but whatever she is trying this time *I deny any wrong doing.*

(Emphasis added). The case was set for mandatory arbitration. After a hearing on January 10, 1994, the arbitrator awarded Wilson $5,500 in damages.

On January 27, 1994, Horsley filed a request for trial de novo in superior court. Trial de novo was set for May 2, then continued to June 6.

On April 18, Horsley filed a motion for leave to amend his answer, asserting a counterclaim for assault and several additional defenses, including self-defense, contributory negligence, intoxication, and failure to mitigate. Horsley's counsel[1] acknowledged that Horsley's pro se answer did not cover these defenses and claims. Nevertheless, Horsley contended that he had raised these issues at arbitration but acknowledged that the arbitration had been neither recorded nor transcribed. Horsley argued that lack of an arbitration record justified trial de novo in superior court on the new issues.

On May 6, the trial court denied Horsley's motion because: (1) Horsley had failed to raise these defenses at the arbitration hearing, although "these things . . . necessarily . . . had been known to Mr. Horsley from the begin-

---

[1]Horsley first retained counsel during arbitration. Counsel withdrew after trial de novo began and later returned.

ning"; and (2) amendment would prejudice plaintiff, with trial set only 30 days away on a case that had been "alive" for 10 months. The court then confined the trial de novo appeal to "the scope of the original pleadings."

The trial was continued to August 19, and Horsley renewed his motion to amend. On July 1, the court denied Horsley's motion a second time, "in the spirit of the arbitration rules."[2]

Trial was continued again, to February 6, 1995. On February 3, counsel met in chambers with the trial judge. There is no record of this conference, but both parties agree that Wilson withdrew her demand for jury trial and Horsley acquiesced. After the conference, the trial was reset for February 7 without a jury. Before the bench trial began, Horsley requested a jury trial, which was denied.

After the bench trial began, the trial judge informed the parties that he had accidentally seen the arbitration award in the file. Horsley requested and was granted a mistrial. Horsley then requested orally that the trial be reset with a jury. The court denied his request and reset the trial for April 14, without a jury.

On March 2, 1995, Horsley filed a motion for jury trial, arguing that his earlier waiver of jury trial was induced by Wilson's false representations that he would be obligated to pay the jury fee. Wilson specifically denied these allegations. A different judge heard and denied this motion, ruling that the first judge did not abuse his discretion in denying Horsley's oral motion for a jury trial.

A bench trial commenced on April 11, 1995, before a third judge. Horsley stipulated to his liability for the assault, reserving for trial the sole issue of damages. As a condition of the stipulation, Horsley reserved the right to

---

[2]In denying Horsley's motion, the court noted that: (1) the requested amendment involved claims that were "factually . . . available" to him before arbitration; (2) Horsley had not been "pushed into arbitration before [he] had a chance to expound on the pleadings;" and (3) Horsley had a chance while in arbitration "to move to amend and follow those procedures." The court's suggestion, that the MAR precluded adding issues for a trial de novo following arbitration, does not appear to be a prime factor in denying Horsley's motion for leave to amend.

appeal the denial of his motions. The trial court awarded Wilson damages of $25,000, plus attorney fees.

## ANALYSIS

### A. Amendment of Answer.

██ ██ Horsley argues that the trial court should have granted leave to amend his answer. CR 15(a) allows amendment as a matter of course anytime before a responsive pleading is served or if the action has not been placed on the calendar, otherwise:

> [A] party may amend his pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

CR 15(a). The purpose of CR 15 is twofold: to facilitate a decision on the merits, and to provide parties with adequate notice of the claims or defenses asserted against them. *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 165, 736 P.2d 249 (1987). We will reverse a trial court's denial of leave to amend under CR 15(a) only for manifest abuse of discretion. *Herron*, 108 Wn.2d at 165.

Wilson argued to the trial court that (1) Horsley's counterclaim for assault was a compulsory counterclaim that he should have pleaded initially under CR 13(a); and (2) allowing it for the first time at trial de novo would be tantamount to trying an additional new case.

The trial court agreed and denied Horsley's motion for leave to amend because: (1) The proposed counterclaim is a compulsory counterclaim under CR 13(a), about which Horsley knew and which he should have pleaded before the arbitration hearing; (2) Horsley failed to request amendment at arbitration, and, therefore, the arbitrator had not considered his counterclaim and affirmative defenses; (3) amendment would be prejudicial to plaintiff Wilson in that it would substantially change the case; (4) the trial date was imminent; and (5) amendment would be contrary to the litigation-reduction policy of mandatory arbitration.

We do not find "manifest abuse of discretion" in the trial court's refusal to grant Horsley leave to amend. *Herron*, 108 Wn.2d at 165.

## 1. Mandatory Arbitration Policy.

In denying Horsley's motion for leave to amend, the trial court noted:

> (3) The purpose of the MAR's is to reduce the volume of litigation, and that purpose is not served by allowing the Defendant to amend his Answer after the arbitration hearing but prior to the trial de novo to include defenses and counterclaims which he factually was aware of prior to the arbitration hearing and which could have been presented and determined in the arbitration.

The issue here is to what extent MAR 7.2 allows postarbitration amendment of pleadings, specifically amendment of defendant's answer to add a counterclaim and affirmative defenses after an arbitration award for the plaintiff. Horsley essentially advocates liberal application of CR 15(a) to postarbitration trials de novo, freely allowing amendment without regard to the completed mandatory arbitration.

Wilson argues that allowing liberal amendment after mandatory arbitration defeats the policy of using arbitration to reduce court congestion and to deter meritless appeals. *See Christie-Lambert Van & Storage Co. v. McLeod*, 39 Wn. App. 298, 693 P.2d 161 (1984). Wilson contends that liberal postarbitration amendment would encourage litigants to "sandbag" the arbitration in anticipation of an improved second chance at a trial de novo if disappointed with the arbitrator's award.

Under the following heading: "**No Reference to Arbitration**," MAR 7.2(b)(1) provides that "[t]he trial de novo shall be conducted as though no arbitration proceeding had occurred." Read together with the text of MAR 7.2(b)(1), the rule's heading appears simply to prohibit reference to a prior arbitration during a trial de novo. In

fact, the first trial judge followed this rule in disqualifying himself after he inadvertently looked at the arbitrator's award.

██ MAR 7.2(c) further provides: "The relief sought at trial de novo shall not be restricted by RCW 7.06, local arbitration rule, or any prior waiver or stipulation made for purposes of arbitration." A party's failure to assert a counterclaim or affirmative defense at a mandatory arbitration does not automatically preclude the party's assertion of such claims for the first time in a subsequent trial de novo.[3] Although the defendant at a trial de novo *may* "add a new defense, assert a counterclaim, or join another defendant," broad discretion is still vested with the trial court. M. WAYNE BLAIR, MANDATORY ARBITRATION AND MEDIATION IN ALTERNATE DISPUTE RESOLUTION DESK-BOOK: ARBITRATION AND MEDIATION IN WASHINGTON, § 2.3(7)(a)(iii) (Bruce F. Meyers ed., 2d ed. 1995). Critical to the trial court's exercise of discretion is whether such amendment may be prejudicial to the other party.[4] *Herron*, 108 Wn.2d 162.

---

[3]MAR 5.4 prevents parties who fail to participate in the arbitration from seeking a trial de novo. That rule is not applicable here; Horsley did participate in the arbitration, albeit not as fully as he might have had he amended his answer before arbitration. *See, e.g. Westberg v. All-Purpose Structures*, 86 Wn. App. 405, 936 P.2d 1175 (1997).

[4]*See also* BLAIR, MANDATORY ARBITRATION, *supra*, at § 2.3(7)(b):

Because the trial is de novo, there is no restriction under the arbitration rules as to what issues, or parties, may be added at the trial de novo though these matters still rest with the discretion of the trial court. These issues are governed by the Civil Rules. Under the Civil Rules the court has considerable discretion as to whether parties should be added, whether claims should be joined or whether the complaint should be amended. CR 15, CR 18, and CR 19. *In making these determinations, the court may wish to consider what occurred at the arbitration hearing. In doing so, the court will, by necessity have to rely on affidavits* because of the lack of any record at the arbitration hearing other than the award. The court, for example, may consider the *timeliness of such motion*, the probable merit of the action taken, the reason for the request, and other such considerations.

Some counsel who have requested a trial de novo have been known to move at the trial to amend a complaint or to add a claim on the theory that it will be more difficult for the appealing party to be assessed attorney fees under MAR 7.3. The courts should be aware of this practice. The case of *Christie-*

Here, Horsley sought to defeat the arbitrator's $5,500 award to Wilson by seeking trial de novo and amending his original general denial to include a counterclaim and new affirmative defenses — intoxication, contributory negligence, self-defense, and failure to mitigate. The trial court concluded that Horsley's proposed amendment constituted a major shift in defense focus, which, coupled with the untimeliness of Horsley's motion, was both prejudicial to Wilson and contrary to the mandatory arbitration policy.

## 2. Prejudice.

In denying Horsley's motion to amend, the trial court noted (1) plaintiff's options of requesting a second arbitration of Horsley's new mandatory counterclaim or defending in superior court, and (2) the resultant costs of either a second arbitration on the amended answer or a trial de novo on "an entirely different set of legal issues than came out of the arbitration," occasioned solely by Horsley's waiting until after arbitration to seek amendment.

## a. Delay.

■ Horsley is correct that "undue delay on the part of the movant in proposing 'the amendment constitutes grounds to deny the motion to amend only 'where such delay works undue hardship or prejudice upon the opposing party.' " *Caruso v. Local 690*, 100 Wn.2d 343, 349, 670 P.2d 240 (1983) (quoting *Appliance Buyers Credit Corp. v. Upton*, 65 Wn.2d 793, 800, 399 P.2d 587 (1965)). Here, the trial court did not base its ruling solely on delay, but rather focused on prejudice to Wilson. The trial court denied Horsley's initial motion to amend in part because it was made on the "eve of trial," some 30 days away. Whether prejudice caused by lack of preparation time

---

*Lambert [Van & Storage Co.] v. McLeod*, 39 Wn. App. 298, 693 P.2d 161 (1984) is a reflection of the practice. *See* § 2.3(7)(c) for a discussion of the case.

(Emphasis added.)

could have been cured, by continuance or the several subsequent unforeseen postponements of the trial, was within the trial court's discretion. *See Raffensperger v. Towne*, 59 Wn.2d 731, 737, 370 P.2d 593 (1962).

## b. Surprise.

The trial court denied Horsley's second motion to amend two and one-half months after service of the proposed amendments on Wilson, when trial was six weeks away. Ultimately trial did not commence until a year after Horsley filed his original motion to amend. Horsley does not dispute Wilson's claim that he knew the factual bases for his amendments at the time he filed his original answer, before arbitration. He is correct that "the fact that the material in the amended pleading could have been included in the original pleading will not preclude amendment, absent prejudice to the nonmoving party." *Herron*, 108 Wn.2d at 166. But surprise alone does not appear to be a primary reason for the trial court's denial of Horsley's requested amendment. Again, prejudice to Wilson was a key factor.

Without a transcript of the arbitration, Horsley was unable to demonstrate that he had raised these defenses and the counterclaim during arbitration;[5] nor did he remedy this deficiency by submitting affidavits to substantiate this claim.[6] Rather he merely asserted to the court, "It is the Defendant's position that all these issues were raised at the time of the arbitration and that by formally putting them in an amended answer now, it is simply more clearly establishing the issues." Aside from Horsley's unsupported

---

[5]Horsley claims that he raised affirmative defense and counterclaim issues at arbitration. Wilson does not refute this claim but rather focuses on the pleadings. Horsley's original answer at best could be characterized as a general denial. Although courts should be willing to allow amendment where, as here, the new claims relate to the original transaction or set of circumstance, *Herron*, 108 Wn.2d at 166, discretion is nevertheless vested in the trial court.

[6]*See* BLAIR, MANDATORY ARBITRATION, *supra*, § 2.3(7)(b) (suggesting the use of affidavits in the absence of an arbitration record).

assertions, there is nothing in the record to demonstrate that Horsley raised these defenses at the arbitration.

### c. Attorney Fees.

Wilson claims that postarbitration amendment would have reduced her chances to recover attorney fees under MAR 7.3. MAR 7.3 provides that a defendant who appeals an arbitration award is liable for a plaintiff's reasonable attorney fees if he fails to "improve [his] position" at trial de novo. Wilson contends that a defendant is very likely to "improve his position" if he withholds defenses at arbitration and later asserts them at trial; such strategy could deny plaintiff attorney fees, to which she is entitled, for being forced to prosecute the same action twice. Such prejudice was one reason for the trial court's denial of Horsley's request for leave to amend.

This prejudice might have been curable by the rule articulated in *Christie-Lambert*, 39 Wn. App. 298. There, an arbitrator awarded damages to plaintiff against co-defendants McLeod and Nolan. McLeod appealed and amended his answer to include a cross-claim against Nolan.[7] The plaintiff's award against McLeod at trial de novo was the same as at arbitration. But the trial court denied plaintiff's request for attorney fees under MAR 7.3 because McLeod had "improved his position" by prevailing on his new cross-claim against Nolan. *Christie-Lambert*, 39 Wn. App. at 300-01. The Court of Appeals reversed, holding that it was unfair and against mandatory arbitration policy to deny attorney fees where the defendant improved his position solely by virtue of a claim that he had not presented at arbitration:

> Interpreting RCW 7.06.060 and MAR 7.3 as not authorizing an attorney fee award where an appellant improves his over-all position at trial de novo *solely because of a new claim brought for the first time at trial . . .* would be counter to the statutory purpose of deterring meritless appeals from mandatory arbitration awards.

---

[7]Leave to amend was not an issue before the court in *Christie-Lambert*.

*Christie-Lambert*, 39 Wn. App. at 303-04 (emphasis added).

Arguably, the trial court here might have used the rule in *Christie-Lambert* to preserve Wilson's ability to recover attorney fees, by ignoring any improvement in Horsley's position at trial de novo attributable to his new counterclaim and affirmative defenses. But the trial court found that the affirmative defenses "were known to the Defendant prior to the arbitration hearing" and should have been "included . . . in his original Answer" or "an Amended Answer prior to the arbitration hearing." The court found that:

> To allow the amendment subsequent to the arbitration would significantly change the case that is being tried de novo from that which was before the arbitrator, making the evaluation under MAR 7.2 regarding costs and attorney fees almost impossible.

Implicit in the trial court's ruling is that the resultant prejudice to Wilson was incurable if amendment were allowed.

We find that the trial court did not abuse its discretion in declining to use the rule in *Christie-Lambert* to calculate attorney fees and in denying Horsley leave to amend.

### B. Motion for Jury Trial.

■ Horsley argues on appeal that the trial court erred by denying his motion for jury trial because: (1) The right to jury trial reattaches on retrial, *Spring v. Department of Labor & Indus.*, 39 Wn. App. 751, 695 P.2d 612 (1985); and (2) his waiver of jury trial was not effective because it did not comply with CR 39. Horsley did not argue either *Spring* or CR 39 to the trial court below.[8] As a general principle, issues not presented to the trial court will not be considered on appeal. RAP 2.5(a); *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983).

---

[8]Horsley's argument at trial was based on his allegations that Wilson fraudulently induced him into waiving jury trial.

574

■ Horsley's argument that RAP 2.5(a)(3) allows review of manifest errors affecting a constitutional right, including the right to trial by jury, is not persuasive in the context of a civil case. This court will not consider constitutional claims in a civil case raised for the first time on appeal unless the court's jurisdiction is at issue. *Northlake Marine Works, Inc. v. City of Seattle*, 70 Wn. App. 491, 512-13, 857 P.2d 283 (1993); *Bernstein v. State*, 53 Wn. App. 456, 767 P.2d 958 (1989). The court's jurisdiction is not at issue here. Thus, we decline to review Horsley's jury trial withdrawal issue on appeal.

## C. Attorney's Fees and Costs on Appeal

Pursuant to MAR 7.3, RAP 18.1, and *Christie-Lambert*, *supra*, we award to respondent Wilson reasonable attorney's fees and costs on appeal.

Affirmed.

HOUGHTON, C.J., and SEINFELD, J., concur.

Respondent's motion for reconsideration granted and opinion modified September 26, 1997; appellant's motion for reconsideration denied October 2, 1997.

Review granted at 134 Wn.2d 1012 (1998).