500

[No. 66037-9. En Banc.]
Argued June 9, 1998.     Decided March 11, 1999.

DIANA WILSON, *Respondent*, v. GARY C. HORSLEY, *Petitioner.*

*Daggy Legal Services*, by *Kurt A. Anagnostou*, for petitioner.

*Reitsch & Weston*, by *Craig W. Weston*, for respondent.

DURHAM, J. — Petitioner Gary C. Horsley seeks review of the Court of Appeals' decision affirming the Cowlitz County Superior Court's denial of his motions for leave to amend his answer and for a jury trial. We hold that the trial court properly denied Horsley's motion to amend his answer to the complaint in this case. On the issue of the jury trial, however, we hold that Horsley's motion for a jury trial should have been granted. Therefore, we affirm in part and reverse in part.

## FACTS

Petitioner Horsley assaulted Respondent Diana Wilson in 1992, causing Wilson to suffer emotional damage and a permanent injury to her right hand. In 1993, Wilson filed a complaint for personal injuries against Horsley in Cowlitz County Superior Court. Horsley's pro se response to the complaint stated:

> In answer to the plaintiffs summons I am not really sure what she is talking about. The only instance I can think of is when on one of her drunks she smacked me in the back of the head and hurt her finger, but what ever she is trying this time I deny any wrong doing.

Clerk's Papers at 5.

The case proceeded to mandatory arbitration in early 1994, and resulted in a judgment for Wilson in the amount of $5,500. Horsley then requested a trial de novo. The trial was initially set as a jury trial scheduled for May 2, 1994, but was continued to June 6 upon Horsley's motion. On April 18, Horsley filed a motion for leave to amend his answer to add contributory negligence, self defense, laches, failure to mitigate, comparative negligence, and intoxication as affirmative defenses. Horsley also sought to make a counterclaim against Wilson for assault.[1]

---

[1] Horsley claims that all of the issues raised by the proposed amendment to his answer were addressed at the arbitration, and that amending the answer served only to clarify the issues. Because there is no transcript of the arbitration proceed-

The trial court denied Horsley's motion to amend after oral arguments. The court reasoned that allowing Horsley to amend would be "grossly unfair" and "prejudic[ial] to the interests of the plaintiff." Report of Proceedings at 8-9 (May 6, 1994). Pointing out that all of the issues raised by Horsley had been known by him since the beginning of the litigation almost a year before, the court further noted that Horsley made his motion "on the eve of trial," after the matter had been through arbitration. *Id.* at 9. The case was, therefore, allowed to proceed within the scope of the original pleadings.

After the court once again continued the trial, this time scheduling it for August 29, Horsley renewed his motion to amend. Horsley raised no new grounds for granting his motion and the motion was denied. Enumerating the reasons for the denial, the court emphasized that Horsley was aware of the factual basis for his proposed defenses prior to the arbitration. Granting Horsley leave to amend his answer would change the case to make it significantly different from that brought before the arbitrator. This difference would make the assessment of attorney fees under Superior Court Mandatory Arbitration Rule (MAR) 7.3 "almost impossible." Clerk's Papers at 30. Further, the court concluded that Horsley's proposed counterclaim was a compulsory counterclaim that should have been pleaded before arbitration. Had Horsley properly included the counterclaim before arbitration, Wilson would have had the option of having the counterclaim arbitrated. Therefore, the court concluded that allowing the amendment after arbitration would be contrary to the litigation reduction purposes of the Mandatory Arbitration Rules.

The trial finally progressed after a third continuance pushed the trial date back to February 1995. In preparation for trial, counsel met in the chambers of the Honor-

---

ings, there is no record to verify this claim. As the Court of Appeals pointed out, however, Horsley could have remedied this problem by submitting affidavits. *Wilson v. Horsley*, 87 Wn. App. 563, 571, 942 P.2d 1046 (1997). Without such affidavits, there is no evidence to substantiate Horsley's assertion that the issues were raised at the arbitration.

able Judge James E.F.X. Warme, the assigned trial judge. Although there is no record of this conference, it is undisputed that in conference Wilson withdrew her jury trial demand, and that Horsley acquiesced, agreeing to have the matter resolved by a bench trial. However, on the day of trial Horsley asked the court for a continuance and requested a jury trial. These requests were denied, and the trial proceeded.

Unfortunately, this trial resulted in a mistrial after Judge Warme informed the parties that he had inadvertently seen the arbitration award. Immediately after the court granted his motion for a mistrial, Horsley requested that the trial be reset as a jury trial. The trial court denied the motion and reset the case as a nonjury trial scheduled to begin in April 1995. Judge Warme then recused himself.

In early March 1995, shortly after Judge Warme declared a mistrial, Horsley submitted a written request for a jury trial. In his request, Horsley argued that he had consented to trial without a jury only because he was informed by Wilson's attorney that he would have to pay the jury fee if he wanted a jury trial.[2] Since his acquiescence to Wilson's withdrawal of a jury request was based upon "misinformation," Horsley asked that the April trial be reset with a six-person jury. Clerk's Papers at 34. The trial court denied this motion, concluding that Judge Warme did not abuse his discretion in denying Horsley's initial oral request for a jury trial. The case proceeded to a bench trial on the issue of damages before the Cowlitz County Superior Court and resulted in a judgment for Wilson in the amount of $25,454.50 plus costs and attorney fees. Horsley appealed the denial of his motions to amend and for a jury trial.

The Court of Appeals affirmed the trial court. *Wilson v. Horsley*, 87 Wn. App. 563, 942 P.2d 1046 (1997). The Court of Appeals concluded that there was no " 'manifest abuse of discretion' " in the trial court's denial of Horsley's motion to amend. *Wilson*, 87 Wn. App. at 568 (quoting *Herron*

---

[2] Wilson's attorney denies making any such misrepresentation to Horsley.

*v. Tribune Publ'g Co.,* 108 Wn.2d 162, 165, 736 P.2d 249 (1987)). In addition, the Court of Appeals declined to reach the issue of Horsley's request for a jury, asserting that he failed to present his arguments on the jury trial issue to the trial court. *Wilson,* 87 Wn. App. at 573-74.

## ANALYSIS

Horsley's Motion to Amend

We turn first to the issue of Horsley's motion to amend his answer. Since, under CR 15(a), Horsley's right to amend as a matter of course had expired, Horsley could amend his answer "only by leave of court or by written consent of the adverse party." CR 15(a). Rule 15(a) specifically provides that leave to amend "shall be freely given when justice so requires." CR 15(a). These rules serve to facilitate proper decisions on the merits, to provide parties with adequate notice of the basis for claims and defenses asserted against them, and to allow amendment of the pleadings except where amendment would result in prejudice to the opposing party. *Caruso v. Local Union No. 690,* 100 Wn.2d 343, 349, 670 P.2d 240 (1983); *Herron,* 108 Wn.2d at 165.

■ The decision to grant leave to amend the pleadings is within the discretion of the trial court. *Sprague v. Sumitomo Forestry Co.,* 104 Wn.2d 751, 763, 709 P.2d 1200 (1985); *Lincoln v. Transamerica Inv. Corp.,* 89 Wn.2d 571, 577, 573 P.2d 1316 (1978). Therefore, when reviewing the court's decision to grant or deny leave to amend, we apply a manifest abuse of discretion test. *Caruso,* 100 Wn.2d at 351. The trial court's decision "will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

■ The touchstone for the denial of a motion to amend is the prejudice such an amendment would cause to the nonmoving party. *Caruso,* 100 Wn.2d at 350. Factors which may be considered in determining whether permitting

amendment would cause prejudice include undue delay, unfair surprise, and jury confusion. *Herron,* 108 Wn.2d at 165-66.

Horsley argues that we should liberally construe CR 15(a) in the context of the Mandatory Arbitration Rules to favor permitting amendment without regard to the completed mandatory arbitration. He claims that the trial court should not have considered the completed arbitration in deciding whether to allow him to amend his answer, and cites MAR 7.2(b)(1) as support for this proposition. MAR 7.2(b)(1) provides that "[t]he trial de novo shall be conducted as though no arbitration proceeding had occurred."

■ Contrary to Horsley's assertion, however, nothing in the Mandatory Arbitration Rules precludes a trial court from considering a motion to amend the pleadings in light of a completed mandatory arbitration. MAR 7.2(b) prohibits only reference to the arbitration when considering the merits of the underlying action in a trial de novo. The language in MAR 7.2(b) does not address the trial court's consideration of procedural matters before commencing the trial de novo. The question of what issues may be added to the trial de novo is governed by the Civil Rules, and therefore, as noted above, remains in the discretion of the trial court. M. Wayne Blair, *Mandatory Arbitration in Washington, in* WASHINGTON STATE BAR ASS'N, ALTERNATE DISPUTE RESOLUTION DESKBOOK: ARBITRATION AND MEDIATION IN WASHINGTON § 2.3(7)(b), at 2-60 (2d ed. 1995).

The fact that a motion to amend is made after a completed arbitration may be relevant to the question of whether allowing amendment would prejudice the opposing party. In fact, the ALTERNATE DISPUTE RESOLUTION DESKBOOK specifically notes that when determining whether a pleading should be amended, "the court *may wish to consider*

*what occurred at the arbitration hearing." Id.* at 2-61 (emphasis added).[3]

In this case, the trial court determined that the fact that Horsley made his motion to amend after completing mandatory arbitration was relevant to the potential prejudice faced by Wilson. The trial court denied Horsley's motion because allowing amendment after arbitration "would be grossly unfair" and would prejudice Wilson. Report of Proceedings at 8-9 (May 6, 1994). The court recognized that the amendments proposed by Horsley would substantially change the case being tried from that which was brought before the arbitrator, thus making the evaluation of costs and attorney fees under MAR 7.3 problematic. Further, allowing Horsley to raise these issues after arbitration would deprive Wilson of the opportunity to have the issues resolved at arbitration. In addition, the court concluded that granting leave to amend would be contrary to the Mandatory Arbitration Rules' purpose of reducing the volume of litigation.

Additional reasons given by the court for denying Horsley's motion to amend include the fact that Horsley's proposed counterclaim was a compulsory counterclaim that should have been pleaded and resolved at arbitration. Finally, the court noted that Horsley raised these issues on the eve of trial, after being aware of the factual basis for the proposed amendments since before the arbitration. Unfair surprise is a factor which may be considered in determining whether permitting amendment would cause prejudice. *Herron*, 108 Wn.2d at 165-66.

We find these reasons to be persuasive and therefore conclude that the trial court did not abuse its discretion in denying Horsley's motion to amend his answer. We affirm

---

[3]This is not to say that a party may never amend the pleadings following arbitration. Indeed, MAR 7.2(c) specifically provides that "[t]he relief sought at a trial de novo shall not be restricted by RCW 7.06, local arbitration rule, or any prior waiver or stipulation made for purposes of arbitration." MAR 7.2(c). A litigant is not automatically precluded from amending his answer to add counterclaims or defenses in the trial de novo. However, the existence of a prior arbitration is a relevant factor that may be considered at the trial court's discretion when deciding whether to grant leave to amend.

the Court of Appeals on the issue of Horsley's motion to amend.

Horsley's Request for a Jury Trial

We move next to the jury trial issue. Horsley contends that the trial court should have granted his request for a jury trial, arguing that his right to a jury trial was revived after the trial court declared a mistrial.[4] We agree. This issue was not reviewed on appeal because the Court of Appeals concluded that Horsley failed to make this argument to the trial court. *Wilson*, 87 Wn. App. at 573-74. The Court of Appeals asserted that under RAP 2.5(a)(3), an appellate court "will not consider constitutional claims in a civil case raised for the first time on appeal unless the court's jurisdiction is at issue." *Wilson*, 87 Wn. App. at 574. Horsley argues that he properly raised the revival issue before the trial court, and challenges the Court of Appeals' interpretation of RAP 2.5(a)(3). Because we conclude that Horsley did, in fact, raise the revival issue at the trial court level, we need not reach the question of whether the Court of Appeals correctly interpreted RAP 2.5(a)(3).

Horsley raised his argument that the mistrial revived his right to a jury trial in his Reply to Plaintiff's Response to Motion for Jury. Clerk's Papers at 40-43. In the reply, Horsley argued that since the judge granted a new trial, "all the rights of the parties have been given back." Clerk's Papers at 42-43. During oral argument on Horsley's motion for a jury trial, his counsel again argued the revival issue: "So, because it's a new trial . . . all my client's rights for a jury, as well as his other rights, come back to him." Report of Proceedings at 6 (Mar. 28, 1995). While Horsley may not have cited relevant Washington case law, he did raise the

---

[4]Horsley also argues that his initial waiver of the jury trial right was invalid because it did not conform with CR 38(d) and CR 39(a)(1)(A). As with Horsley's revival issue, the Court of Appeals declined to review this issue. *Wilson*, 87 Wn. App. at 573-74. Respondent now contends that Horsley conceded the initial waiver question at the trial court during oral arguments on Horsley's motion for a jury trial. Because we find the issue of the revival of the jury trial right after a mistrial to be determinative, we need not consider whether Horsley validly waived his right to a jury trial.

revival issue before the trial court. The Court of Appeals, therefore, erred in failing to consider the trial court's denial of Horsley's request for a jury trial.

In regard to the merits of Horsley's claim that he was entitled to a jury trial, we hold that Horsley should have been granted a jury trial following the mistrial. The Washington State Constitution unequivocally guarantees that "[t]he right of trial by jury shall remain inviolate . . . ." CONST. art. I, § 21. An inviolate right "must not diminish over time and must be protected from all assaults to its essential guaranties." *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 656, 771 P.2d 711, 780 P.2d 260 (1989). Moreover, any waiver of a right guaranteed by a state's constitution should be narrowly construed in favor of preserving the right. *Burnham v. North Chicago St. Ry. Co.*, 88 F. 627, 629 (7th Cir. 1898).

This court has never considered the issue of whether the right to a jury trial is revived upon mistrial. In 1893 we held that a party's waiver of a jury trial remains in force for the retrial after partial remand of the original action. *Park v. Mighell*, 7 Wash. 304, 35 P. 63 (1893). *Park* is not instructive here, however. In *Park*, the matter was remanded back to the same referee because that referee failed to make factual findings on many issues raised in the case and because "there never had been a complete trial." *Id.* at 305. Furthermore, the case was specifically remanded to the same referee to make factual findings upon testimony already taken. The peculiar circumstances of the *Park* case render its precedential value questionable at best.

In asserting that his right to a jury trial was revived upon the trial court's declaration of a mistrial, Horsley relies upon an analogous Court of Appeals case, *Spring v. Department of Labor & Indus.*, 39 Wn. App. 751, 695 P.2d 612 (1985). In *Spring*, the Court of Appeals held that a party's waiver of a jury trial in an initial proceeding did not waive the right to a jury trial in subsequent proceedings. *Id.* at 754-56. When granted a new trial after his first case was reversed and remanded, Spring could therefore

assert his right to a jury trial even though he failed to do so during the first trial. The Court of Appeals adopted the rationale of a Wisconsin case, *Tesky v. Tesky*, 110 Wis. 2d 205, 327 N.W.2d 706 (1983), reasoning that since the parties agreeing to a trial without a jury would not presume that there would ever even be a second trial, any agreement by the parties would have been made without reference to the subsequent trial. *Spring*, 39 Wn. App. at 756 (citing *Tesky*, 327 N.W.2d at 708 (1983)).

As noted in *Spring*, many other states have considered this issue. Of those that have, many states have determined that the waiver of a jury trial is not operative for the subsequent trial of the same case. Annotation, *Waiver of Right to Jury Trial as Operative After Expiration of Term During Which it was Made, or as Regards Subsequent Trial*, 106 A.L.R. 203, 205 (1937). Waiver is defined as the "intentional or voluntary relinquishment of a known right." BLACK'S LAW DICTIONARY 1580 (6th ed. 1990). Since, as noted above, the party waiving the right to a jury trial likely does so without contemplating the possibility of a subsequent trial, the party does not intentionally "waive" the right to trial by jury in the second trial. *Seymour v. Swart*, 695 P.2d 509, 512, 48 A.L.R.4TH 739 (Okla. 1985); *Nedrow v. Michigan-Wisconsin Pipe Line Co.*, 246 Iowa 1075, 70 N.W.2d 843, 844 (1955). Additionally, because the right to a jury trial in the second trial was not a "known" or existing right, it could not be impliedly waived. *Seymour*, 695 P.2d at 512.

Limiting the waiver of a jury trial to the initial proceedings is also justified by the fact that conditions could be "wholly different at the second trial from what they were at the first." *Nedrow*, 70 N.W.2d at 844. The second trial could involve a different judge or jury pool. "[I]t is hardly fair to presume that by waiving a jury for one trial the parties intended to waive a jury for any further trial that may be had . . . ." *Id.*

Federal precedent supports the conclusion that a mistrial revives the right to a jury trial. The Third Circuit has held

that following a mistrial, parties are free to assert or waive their rights to a jury trial. *United States v. Lutz*, 420 F.2d 414, 416 (3rd Cir. 1970). Similarly, in *Zemunski v. Kenney*, the Eighth Circuit determined that while "a mistrial does not automatically cancel a jury waiver, a defendant may withdraw the waiver before a retrial." 984 F.2d 953, 954 (8th Cir. 1993). The Sixth Circuit has also held that, unless the original waiver of a jury trial explicitly covers the contingency of a retrial, waiver does not bar demand for a jury on retrial of the same case. *United States v. Groth*, 682 F.2d 578, 580, 66 A.L.R. FED. 854 (6th Cir. 1982). Finally, in an analogous case, the Ninth Circuit concluded that consent to trial before a magistrate may be revoked or withdrawn in a timely fashion following a mistrial, reasoning that, "[l]ike the waiver of some other constitutional rights, it should not, once uttered, be deemed forever binding." *United States v. Mortensen*, 860 F.2d 948, 950 (9th Cir. 1988).

We agree with *Spring* and the cases from other jurisdictions holding that the right to a jury trial is revived upon declaration of a mistrial.[5] As noted above, the right to a jury trial is a valuable constitutional right, and its waiver must be strictly construed. Allowing the waiver of a jury trial to remain valid for subsequent trials of the same case would impermissibly allow the unintentional waiver of prospective rights. Parties who waive the right to a jury in one proceeding cannot be deemed to have given up the right for all subsequent proceedings.

## CONCLUSION

We affirm the Court of Appeals' decision upholding the

---

[5]The fact that *Spring v. Department of Labor & Indus.*, 39 Wn. App. 751, 695 P.2d 612 (1985), involved a case that was remanded after trial, and not a mistrial, does not distinguish it from the present case. In *Spring*, the Court of Appeals correctly noted that in Washington, following a reversal of the trial court judgment, a case " 'stands exactly as it stood before the trial.' " *Spring*, 39 Wn. App. at 756 (quoting *Richardson v. Carbon Hill Coal Co.*, 18 Wash. 368, 372, 51 P. 402, 51 P. 1046 (1897)). This same rule applies to a case following a declaration of a mistrial.

trial court's denial of Horsley's motion to amend his answer in this case. Because the trial court grounded its decision on the prejudice such an amendment would cause to the opposing party, we conclude that the trial court did not abuse its discretion in denying Horsley's motion to amend. We reverse the Court of Appeals' judgment on the issue of Horsley's motion for a jury trial. Parties who waive the right to a jury trial are free to assert this right following a mistrial. For this reason, the trial court should have granted Horsley's motion for a jury trial. Petitioner Horsley is, therefore, entitled to a jury trial with the same pleadings.

GUY, C.J., SMITH, ALEXANDER, and TALMADGE, JJ., and DOLLIVER, J. Pro Tem., concur.

SANDERS, J. (concurring in part/dissenting in part) — The majority correctly recognizes the decision denying petitioner Gary Horsley his constitutionally mandated day in court was error, requiring reversal and new trial. Majority at 511. However the majority persists in its refusal to honor Horsley's right to amend his original pro se answer, claiming respondent Diana Wilson would somehow be prejudiced if she were forced to respond to such an amended answer at a trial some *five years* or more after the amendments were proposed.[6] Majority at 511-12. Balderdash.

## Motion to Amend

Since the American Civil War we have stated failure to grant leave to amend where the interests of justice would be promoted is an abuse of discretion. *See Newberg v. Farmer*, 1 Wash. Terr. 182, 183-84 (1862). As the majority notes, abuse of discretion is " 'discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " Majority at 505 (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). Such

---

[6]Horsley filed his motion to amend on April 18, 1994. Clerk's Papers (CP) at 13.

determination "depends upon the comparative and compelling public or private interests of those affected by the order or decision and the comparative weight of the reasons for and against the decision . . . .", *id.* at 26, requiring the trial court's alleged abuse be examined in light of the purpose of our rule governing amendments.

Horsley was entitled to amend his answer with the leave of the court, and the rule requires that such leave "shall be freely given when justice so requires." CR 15(a). Shall means shall. It imposes "a mandatory duty." *See, e.g., Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n,* 123 Wn.2d 621, 629, 869 P.2d 1034 (1994). This ideal of *freely* granting the right to amend is well integrated into our jurisprudence, and, as we have articulated, amendments "have *always been* . . . liberally allowed." *J.D. O'Malley & Co. v. Lewis,* 176 Wash. 194, 198, 28 P.2d 283 (1934) (emphasis added).

"The purpose of pleadings is to 'facilitate a proper decision on the merits', and not to erect formal and burdensome impediments to the litigation process." *Caruso v. Local Union No. 690,* 100 Wn.2d 343, 349, 670 P.2d 240 (1983) (quoting *Conley v. Gibson,* 355 U.S. 41, 48, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). When construing the comparable federal rule, FED. R. CIV. P. 15(a),[7] the United States Supreme Court has said the declaration that leave shall be freely granted constitutes a "mandate [that] is to be heeded." *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962) (citation omitted). Failure to grant leave without proper justification is therefore not an exercise of discretion, but an abuse of discretion. *Id.*

The touchstone for denial is the prejudice the amendment would cause the nonmoving party. *Caruso,* 100 Wn.2d at 350. The party opposing the amendment has the burden to show it. *See id.* at 351; *In re Revocation of License of*

---

[7]Rule 15 of Superior Court Civil Rules was taken from FED. R. CIV. P. 15 and was designed to facilitate the same ends as FED. R. CIV. P. 15. *Caruso,* 100 Wn.2d at 349. *See also Adams v. Allstate Ins. Co.,* 58 Wn.2d 659, 672, 364 P.2d 804 (1961) ("Our rule [15(a)] is the exact counterpart of the provision in the Federal rules of civil procedure . . . .").

*Campbell*, 19 Wn.2d 300, 307, 142 P.2d 492 (1943); *Tagliani v. Colwell*, 10 Wn. App. 227, 234, 517 P.2d 207 (1973). Plaintiffs are allowed leave to amend " 'unless it appears to a certainty that plaintiff would not be entitled to any relief under any state of facts . . . .' " *Adams v. Allstate Ins. Co.*, 58 Wn.2d 659, 672, 364 P.2d 804 (1961) (quoting *Fuhrer v. Fuhrer*, 292 F.2d 140, 143 (7th Cir. 1961)). Therefore the question is: Has Wilson shown she would be prejudiced if Horsley was granted leave to amend?

This search for prejudice may be enlightened by a number of factors, including undue delay, unfair surprise, jury confusion, introduction of remote issues, or lengthy trial. *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 165-66, 736 P.2d 249 (1987). However Wilson has simply not shown prejudice based upon these or any other factors.

Delay, per se, is no reason for denial. If it were, no leave to amend would ever be allowed as amendments are by their nature delayed beyond the original pleading. Delay, excusable or not, is not sufficient reason to deny a motion to amend unless it works some undue hardship or prejudice upon the opposing party. *Id.* Horsley filed his motion to amend seven months after he filed his original pro se answer. How "undue" was this delay is a matter of opinion; however, we have held that a delay of over five years is acceptable absent a showing of prejudice by the party opposing amendment. *Caruso*, 100 Wn.2d at 349.

The trial court also complained Horsley was seeking to amend "on the eve of trial." Report of Proceedings (RP) at 8 (May 6, 1994). But Horsley originally sought to amend his answer more than a month and a half before the originally scheduled trial start date, and a hearing was held on the motion a month before trial. In fact the trial actually took place a year after Horsley first sought leave to amend. And the retrial the majority orders today will be substantially after this opinion is published—a minimum of *five years* after the motion to amend was first made. Yet our rule has been to allow amendment at any stage of the proceeding. *Hendricks v. Hendricks*, 35 Wn.2d 139, 148, 211 P.2d 715 (1949).

When the amendment seeks only to assert a new legal theory based upon the same circumstances set forth in the original pleading, it should be allowed. *Herron*, 108 Wn.2d at 166. Such is exactly the case here. Horsley's original answer claimed Wilson, while intoxicated, hurt herself when she struck him. In his amended answer he proposed several alternative theories, including comparative negligence, self-defense, and Wilson's lack of mitigation, based upon the same facts underlying his original answer. Such is exactly the situation which those policies underlying CR 15 are designed to promote, dictating leave to amend should be freely given. *See Herron*, 108 Wn.2d at 166-67. However this is exactly the opposite from the conclusion reached by the trial judge who denied leave to amend precisely because Horsley raised new theories based on facts known at the time of his original complaint. RP at 8-9.[8]

The majority gives short shrift to the mandatory language of CR 15 and the numerous cases from this court and the United States Supreme Court which apply it. The bulk of the majority's analysis is premised upon the fact that Horsley sought to amend after arbitration. Majority at 506-07.

But even following arbitration an aggrieved party is entitled by right to a trial de novo in superior court "on all issues of law and fact." RCW 7.06.050; *see also* Mandatory Arbitration Rule (MAR) 7.1. That is, Horsley was entitled to "[a] new trial . . . in which the whole case is retried as if no trial whatever had been had in the first instance." BLACK'S LAW DICTIONARY 1505-06 (6th ed. 1990). *See also In re Littlefield*, 61 Wash. 150, 153 112 P. 234 (1910) (trial de novo means trial anew); MAR 7.2(b)(1) ("The trial de novo shall be conducted as though no arbitration proceeding had occurred."). The Washington State Bar Association in 1989

---

[8]Horsley also added a counterclaim in his amended answer which the trial judge held was "compulsory" and therefore should have been pleaded prior to arbitration. CP at 30 (citing CR 13(a) which governs claims that arise out of the original transaction or occurrence). But the rules clearly intend that the amended complaint *can* set forth additional claims arising out of the original conduct, as CR 15(c) covers the relation back of such claims. Why would a rule exist to govern such claims if they are not to be permitted? *See Herron*, 108 Wn.2d at 166.

proposed amendments to the MARs that " 'were necessary to ensure the effectiveness of [the de novo review] mandate.' " 4A LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE 41 (quoting Washington State Bar Association comments on MAR 7.2). Where there is no ambiguity in the language there is no room for construction. *POWER v. Utilities & Transp. Comm'n*, 101 Wn.2d 425, 429, 679 P.2d 922 (1984).

In almost exact contradiction to the rule our majority opines the trial de novo must be conducted *exactly* in accord with the arbitration proceeding which previously occurred, holding the trial court may "consider" what occurred at the arbitration and base its decisions accordingly. This view is supported by a single sentence in a practitioner prepared deskbook, majority at 506 (quoting M. Wayne Blair, *Mandatory Arbitration in Washington, in* WASHINGTON STATE BAR ASS'N, ALTERNATE DISPUTE RESOLUTION DESKBOOK: ARBITRATION AND MEDIATION IN WASHINGTON § 2.3(7)(b), at 2-60 (2d ed. 1995) (ADR DESKBOOK), but is contrary to the express language of MAR 7.2(b)(1) that "[t]he trial de novo shall be conducted as though no arbitration proceeding had occurred."

Even the deskbook observes that the decision to amend is governed by CR 15. ADR DESKBOOK § 3(7)(b). But CR 15 is exactly what both the trial court and the majority ignore by failing to articulate exactly how Horsley's proposed amendments would prejudice Wilson. The majority states that the proposed amendments would "substantially change the case." Majority at 507. They don't, but even if they did, that, more or less, is what amendments are for. Here the amendments and counterclaims are based on the original facts. All the more reason they should be granted.[9] *See Herron*, 108 Wn.2d at 166-67. Naked claims of prejudice do not establish it.

---

[9]Of course, should a party prevail on a counterclaim raised *after* arbitration, a question may arise regarding the calculation and/or propriety of reasonable attorney fees allowed by MAR 7.3, which requires the superior court to assess fees against the party who fails to improve its position at a trial de novo. However, the solution is to assess or fashion fees in consideration of the effect of the new claim,

Finally, the majority claims reduction of litigation as its purpose.[10] Majority at 507. I would rather posit our rules and holdings require our focus on a single value: the interest of justice. *See* CR 15(a); *Caruso*, 100 Wn.2d at 349; *Adams*, 58 Wn.2d at 671-72; *see also Foman*, 371 U.S. at 182. The Court of Appeals has held an abuse of discretion occurs where a trial court refused to allow an amendment after an oral ruling on a summary judgment motion. *Tagliani*, 10 Wn. App. at 234. Similarly, the United States Supreme Court applied the identical Fed. R. Civ. P. 15(a) to reverse a trial court's denial of leave to amend when the motion was made after the petitioner's complaint had been dismissed for failure to state a claim. *Foman*, 371 U.S. at 179. And our territorial court went so far as to hold that amendment must be allowed, if justice requires, on an *appeal* from the Justice's Court to the District Court. *Newberg*, 1 Wash. Terr. at 183-84. The considerations of justice which prompted these historical results do not change over time.

Here Horsley was unjustly forced to proceed to trial within the scope of his original pro se answer, a single handwritten paragraph prepared without legal assistance.[11] There is just reason, and plenty of time, to allow the amendment on remand.

---

not to deny a party its statutory right to a trial de novo. *See Christie-Lambert Van & Storage Co. v. McLeod*, 39 Wn. App. 298, 305, 693 P.2d 161 (1984).

[10]The "advantages" of mandatory arbitration over the traditional method of securing rights through access to the courts is, itself, a subject of extensive comment. *See, e.g.*, Judge G. Thomas Eisele, *Differing Visions—Differing Values: A Comment on Judge Parker's Reformation Model for Federal District Courts*, 46 SMU L. Rev. 1935, 1959 (1993) ("'[C]ourt-annexed arbitration is surely giving traditional arbitration a bad name. This is because the objectives of the two procedures are different. Traditional arbitration may go to some lengths to establish the true facts, but that would defeat the purpose of *court-annexed* arbitration. If court-annexed ADRs [alternative dispute resolutions] are not limited in time and procedure, they may last as long as a trials. Therefore, if one's only justification for such diversions in the first place is the alleged reduction in costs and delays, we have a problem, don't we?'").

[11]The entire original answer is set out by the majority at 502.

518

JOHNSON and MADSEN, JJ., concur with SANDERS, J.