# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

F.P.H. CONSTRUCTION, INC.,
a Washington corporation,

Respondent,

v.

MAHMOUD SHAHREZAEI and
ESHMAIL SHAHREZAEI, husband
and wife; and C&SH ENTERPRISES,
LLC, a Washington limited liability
company,

Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 76024-6-I

UNPUBLISHED OPINION

FILED: January 17, 2017

VERELLEN, C.J. — Eshmail Shahrezaei appeals from the judgment entered against him in favor of F.P.H. Construction, Inc. He contends the trial court abused its discretion when it allowed F.P.H. to amend its complaint before trial de novo to correct mistakes in its initial complaint and to plead a quantum meruit theory. It was within the discretion of the trial court to conclude F.P.H.'s delay was not inexcusable. And because the initial complaint identified Eshmail as a defendant and referred to unjust enrichment, there was no unfair surprise. Eshmail does not establish any genuine issue of material fact precluding summary judgment on quantum meruit.

We affirm the trial court's order.

FACTS

F.P.H. alleges it had an agreement with Mahmoud Shahrezaei and Eshmail Shahrezaei[1] to perform work at a nightclub and bar located in Silverdale, Washington known as the Old Town Bistro.

The work consisted of three phases. The first phase for work, between June 2006 and April 2009, was paid in full. The final two phases were undertaken in late 2009 through March 2010. These final two phases were memorialized in two written contracts. The first contract for a fire suppression system had a fixed price of $82,921.00. The second contract for a grease trap and associated work had a fixed price of $19,320.00.

F.P.H. billed approximately $120,000.00 for this work and approximately $50,000.00 remains unpaid.

In November 2012, F.P.H. sued C&SH Enterprises LLC, Mahmoud and Eshmail, but the complaint alleged Mahmoud and Eshmail were "husband and wife."[2] The complaint sought a judgment against them individually "and their marital community" in the amount of $38,652.24.[3] In Eshmail's answer, he alleged he "is not spouse of Mahmoud Shahrezaei" and "is not and never been officer of corporation or managing partner."[4] The matter proceeded to mandatory arbitration on July 29, 2013.[5] The

---

[1] For ease of reference, we refer to Mahmoud Shahrezaei and Eshmail Shahrezaei by their first names.

[2] Clerk's Papers (CP) at 4.

[3] CP at 5.

[4] CP at 18.

[5] Although each written contract included an arbitration clause, it does not appear any party invoked private arbitration.

2

arbitrator awarded F.P.H. a total of $90,555.45 against Mahmoud and Eshmail "and *their marital communities*, jointly and severally."[6] The arbitration award was served on August 15, 2014.

It is undisputed that in September 2014, Mahmoud and Eshmail timely requested a trial de novo.[7]

F.P.H. moved to amend its complaint on February 23, 2015 to correct errors in its original complaint:

> [Mahmoud] and [Eshmail] are brothers and not husband and wife; there were two written contracts rather than one, together with an oral contract pertaining to certain incidental work; and the amounts due were incorrectly identified in the Complaint.[8]

In addition, F.P.H.'s counsel attached a declaration explaining the errors in the initial complaint. The trial court granted the motion, and F.P.H. filed its amended complaint on March 24, 2015. The initial complaint alleged "[t]he LLC received the value and benefit of such work would be unjustly enriched if it were allowed to retain the benefit of such work without full payment therefor[ ]."[9] In paragraphs VII and VIII of the amended complaint, F.P.H. alleged

> [t]he reasonable value of the work exceeded $120,000.00. The Defendants received the value and benefit of such work and were unjustly enriched to the extent it failed to pay the contracted amounts due Plaintiff.
>
> Defendants are justly indebted to the Plaintiff for the principal sum of $54,733.90 plus interest thereon as provided in the Contract at 18% per annum in an amount to be proven at the time of trial or further hearing.[10]

---

[6] CP at 20 (emphasis added).

[7] Mahmoud subsequently withdrew his request for a trial de novo.

[8] CP at 22.

[9] CP at 4.

[10] CP at 61.

F.P.H. moved for partial summary judgment supported by the declaration of Stephanie Nevarez, who worked at the Old Town Bistro. Nevarez states that Mahmoud and Eshmail approached her and her husband in early 2009 to "help them turn around a bar and nightclub they represented they owned in Silverdale known as the 'Old Town Bistro.'"[11] According to Nevarez, Eshmail and Mahmoud invited Nevarez and her husband "to invest in the business."[12] Nevarez also said:

> At all material times, [Eshmail] and [Mahmoud] held themselves out as the owners of the Bistro. My husband and I were not aware title to the Bistro might be in the name of a Limited Liability Company until we began receiving paychecks.
>
> Although the checks contained the name "C&SH Enterprises, LLC", [Mahmoud] or [Eshmail] always referred to themselves as the owners of the Bistro.[13]

Navarez's declaration included the employee handbook for the Old Town Bistro. In the employee handbook, Eshmail and Mahmoud are each referred to as owners. They also referred to themselves as proprietors on their business cards for the Old Town Bistro.

F.P.H. also submitted a declaration from Michael Brown, the president of F.P.H. Brown said that Eshmail and Mahmoud requested the work, held themselves out as co-owners of Old Town Bistro, and did not disclose that the business was a corporation or limited lability company.

Two written contracts were attached to Brown's declaration. The opening paragraph of each contains handwritten entries identifying Eshmail Shahrezaei and Mahmoud Shahrezaei as the owner with no mention of C&SH LLC. Each of the two

---

[11] CP at 95.

[12] CP at 96.

[13] CP at 96.

4

contracts contains two apparent signatures at the end of each contract in the space for signature by the owner.

Eshmail offered his own four-sentence declaration opposing partial summary judgment, stating

> I am one of the defendants in this action and a resident of Florida. I did not sign the contracts that [F.P.H.] alleges I signed. I have never entered into any contract or agreement with [F.P.H.] or anyone acting on [F.P.H.]'s behalf. I also have not benefitted from any work or services provided by [F.P.H.] or anyone acting on [F.P.H.]'s behalf.[14]

On F.P.H.'s motion, the court struck two of Eshmail's statements as conclusory: "I have never entered into any contract or agreement" and "I also have not benefitted from any work or services provided by Plaintiff."[15] The trial court granted F.P.H.'s motion for partial summary judgment and entered judgment against Eshmail.

Eshmail appeals.

## ANALYSIS

We review a motion for summary judgment de novo and engage in the same inquiry as the trial court.[16]

Eshmail argues the trial court abused its discretion when it allowed F.P.H. to amend its complaint because those amendments "were a subversion of the mandatory arbitration process," F.P.H. "failed to demonstrate excusable neglect," and Eshmail was "prejudiced by undue delay and unfair surprise."[17]

---

[14] CP at 263.

[15] CP at 280.

[16] Hartley v. State, 103 Wn.2d 768, 774, 698 P.2d 77 (1985).

[17] Appellant's Br. at 16.

The decision to grant leave to amend the pleadings is within the sound discretion of the trial court.[18] A trial court's decision on a motion for leave to amend will not be disturbed absent a manifest abuse of discretion or a failure to exercise discretion.[19]

A party may amend its complaint "by leave of court or by written consent of the adverse party."[20] Leave to amend "shall be freely given when justice so requires."[21] "The touchstone for denial of an amendment is the prejudice such amendment would cause the nonmoving party."[22] "Factors which may be considered in determining whether permitting amendment would cause prejudice include undue delay, unfair surprise, and jury confusion."[23]

Eshmail contends F.P.H.'s delay of "almost two years" to correct its mistakes constituted "inexcusable neglect" and sufficient grounds for denying F.P.H.'s motion to amend.[24] But delay alone is insufficient to support a denial of leave to amend.[25]

Eshmail relies on Haberman v. Washington Public Power Supply System, where an amendment to add parties was inexcusable because "the identities of all the

---

[18] Sprague v. Sumitomo Forestry Co., Ltd., 104 Wn.2d 751, 763, 709 P.2d 1200 (1985).

[19] Caruso v. Local Union No. 690, 100 Wn.2d 343, 351, 670 P.2d 240 (1983).

[20] CR 15(a).

[21] Id.

[22] Caruso, 100 Wn.2d at 350.

[23] Wilson v. Horsley, 137 Wn.2d 500, 505-06, 974 P.2d 316 (1999).

[24] Appellant's Br. at 16.

[25] Caruso, 100 Wn.2d at 349.

defendants sought to be added was readily available to plaintiffs from a variety of public sources."[26]

Brown may have had an opportunity to earlier determine the true relationship between Mahmoud and Eshmail, but unlike Haberman, Eshmail was already a party to the lawsuit and the minimal record provided by Eshmail fails to establish that the precise relationship between Mahmoud and Eshmail was readily available to F.P.H. In Eshmail's answer he merely stated, "[Eshmail] is not spouse of Mahmoud Shahrezaei," without further clarification.[27] The trial court did not abuse its discretion in concluding the delay alone did not preclude an amendment.

Importantly, Eshmail does not establish any unfair surprise. The original complaint named both Mahmoud and Eshmail as defendants, along with C&SH Enterprises. After F.P.H. received answers to the complaint, F.P.H. notified Eshmail that it would be making a motion to amend the complaint "to conform to the evidence."[28] F.P.H.'s counsel explained the mistake in naming Eshmail and Mahmoud as husband and wife and the discrepancy as to whether there were one or two contracts at issue. Eshmail claims that F.P.H. adding parties *after* the arbitration prejudices the new parties, but offers no authority precluding such an amendment prior to the trial de novo. And it appears that the arbitrator was fully apprised on this point during the arbitration

---

[26] 109 Wn.2d 107, 174, 744 P.2d 1032 (1987), amended, 109 Wn.2d 107, 750 P.2d 254 (1988).

[27] CP at 18.

[28] CP at 50.

because the arbitration award was made against "Defendants Mahmoud Shahrezaei and Eshmail Shahrezaei, *and their marital communities, jointly and severally.*"[29]

Eshmail argues F.P.H.'s motion to amend was a pretext to add Mahmoud and Eshmail's spouses to the case. But considering the record on de novo review, F.P.H. made a mistake in its original complaint, learned of the mistake, and the arbitration award reflects that F.P.H. corrected the mistake in the arbitration. We conclude the trial court did not abuse its discretion in granting F.P.H.'s motion to amend.

Next, Eshmail argues F.P.H.'s quantum meruit claim was not properly before the trial court because F.P.H.'s amended complaint for monies owed "makes no mention of the theory of quantum meruit."[30] This court interprets and applies CR 8 pleading requirements de novo.[31] Washington is a notice pleading state and requires a simple concise statement of the claim and the relief sought.[32] "It is well established that pleadings are to be liberally construed; their purpose is to facilitate proper decision on the merits, not to erect formal and burdensome impediments to the litigation process."[33] If the "complaint states facts entitling the plaintiff to some relief, it is immaterial by what

---

[29] CP at 20 (emphasis added).

[30] Appellant's Br. at 11.

[31] Estate of Dormaier ex rel. Dormaier v. Columbia Basin Anesthesia, PLLC, 177 Wn. App. 828, 853, 313 P.3d 431 (2013).

[32] CR 8(a); Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 352, 144 P.3d 276 (2006).

[33] State v. Adams, 107 Wn.2d 611, 620, 732 P.2d 149 (1987); Caruso, 100 Wn.2d at 349; Simpson v. State, 26 Wn. App. 687, 691, 615 P.2d 1297 (1980).

name the action is called."[34] "Furthermore, initial pleadings which may be unclear may be clarified during the course of summary judgment proceedings."[35]

Quantum meruit is a remedy to recover "a reasonable amount for work done."[36] It falls within the broader category of "unjust enrichment."[37] Though it is not a legal obligation like contract or quasi-contract, the remedy of quantum meruit applies in a variety of situations.[38] The elements of an implied in fact contract are: (i) the defendant requests work, (ii) the plaintiff expects payment for the work, and (iii) the defendant knows or should know the plaintiff expects payment for the work.[39]

Eshmail argues the only claim in F.P.H.'s amended complaint was for monies owed "on two written contracts" and F.P.H. "did not ask for relief of the reasonable value of the work done, which is the cornerstone of the theory of quantum meruit."[40]

When read liberally under our notice pleading standard, the amended complaint adequately alleges that Eshmail requested work, F.P.H. expected to be paid for the

---

[34] Adams, 107 Wn.2d at 620.

[35] Id.

[36] Eaton v. Engelcke Mfg., Inc., 37 Wn. App. 677, 680, 681 P.2d 1312 (1984).

[37] Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc., 61 Wn. App. 151, 160, 810 P.2d 12 (1991) ("Thus while quantum meruit, inasmuch as it involves retention of benefits in the form of services received, falls within the unjust enrichment doctrine, unjust enrichment applies to a far broader category of cases.").

[38] Eaton, 37 Wn. App. at 680 (affirming quantum meruit award on basis of contract implied in fact); Lester N. Johnson Co. v. Spokane, 22 Wn. App. 265, 274, 588 P.2d 1214 (1978) (when parties enter into a contract and substantial change not within their contemplation later occurs); Dravo Corp. v. L.W. Moses Co., 6 Wn. App. 74, 91, 492 P.2d 1058 (1971) (restitution for part performance); Kintz v. Read, 28 Wn. App. 731, 626 P.2d 52 (1981); Hopkins v. Anderson, 7 Wn. App. 762, 502 P.2d 473 (1972) (implied in fact contract to pay the reasonable value for services rendered).

[39] Young v. Young, 164 Wn.2d 477, 485-86, 191 P.3d 1258 (2008).

[40] Appellant's Br. at 11.

work, and Eshmail knew or should have known F.P.H. expected to be paid for the work.[41] The initial complaint expressly alleged the limited liability company received the value of the work and would be "unjustly enriched" if it did not pay.[42] The amended complaint expanded similar allegations of unjust enrichment to all defendants. Under our liberal notice pleading standards, we conclude F.P.H.'s amended complaint adequately plead a quantum meruit cause of action. Additionally, the trial court did not abuse its discretion in amending the complaint to include a quantum meruit cause of action.[43]

Eshmail argues that even if considered, summary judgment was not warranted on quantum meruit because he denied entering into any contract or receiving any benefit from the services provided by F.P.H. His arguments turn on the significance and admissibility of his statements stricken by the trial court. We review evidentiary decisions de novo made in conjunction with an order on summary judgment.[44] "A declaration that contains only conclusory statements without adequate factual support does not create an issue of material fact that defeats a motion for summary judgment."[45] We need not address Eshmail's assertion that he did not enter into any agreement, because there is undisputed evidence he represented himself as a co-owner without disclosing the existence of a limited liability company and requested the work. His bare

---

[41] See CP 60-61 (Paragraphs IV, V, VI, VII, VIII).

[42] CP at 4.

[43] Eshmail denied signing the two contracts attached to Brown's declaration. But the theory of quantum meruit does not depend upon signed contracts. We do not rely on F.P.H.'s alternative theory that Eshmail signed and breached the two written contracts.

[44] Lane v. Harborview Medical Ctr., 154 Wn. App. 279, 288, 227 P.3d 297 (2010).

[45] Id. at 286.

statement that he did not benefit from any of the work was not offered with any context or explanation. Because it is conclusory and lacks factual support, we do not consider it on de novo review. Eshmail's declaration consisted of four short sentences and did not dispute that he was a co-owner of the business, did not disclose the existence of a limited liability company, and did not deny that the Old Town Bistro benefited from the fire suppression system and grease trap installed by F.P.H.. Eshmail failed to establish any genuine issue of material fact.

We affirm the trial court's order.

WE CONCUR:

Cox, J.