1
 2025 CO 48 The People of the State of Colorado, Petitioner: In the Interest of Minor Children: Kay. W., Kai.W., E.W., D.W., and S.W., and Kay. W., Kai.W., E.W., D.W., and S.W., Petitioners: v. K.L.W. Respondent: No. 24SC621
Supreme Court of Colorado, En Banc
June 30, 2025
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 23CA2106
 
 
          
 Attorneys for Petitioner People of the State of Colorado:
 
 
          
 Kenneth Hodges, El Paso County Attorney
 
 
          
 Colorado Springs, Colorado
 
 
          
 Melanie Douglas LLC
 
 
          
 Melanie Douglas
 
 
          
 Colorado Springs, Colorado
 
 2
 
          
 Attorney for Petitioners Kay.W., Kai.W., E.W., D.W., and
 S.W.:
 
 
           Josi
 McCauley, guardian ad litem
 
 
          
 Superior, Colorado
 
 
          
 Attorney for Respondent:
 
 
          
 Michael Kovaka
 
 
          
 Littleton, Colorado
 
 
          
 JUSTICE SAMOUR delivered the Opinion of the Court, in which
 CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD,
 JUSTICE GABRIEL, JUSTICE HART, and JUSTICE BERKENKOTTER
 joined.
 
 
 3
 
           SAMOUR
 JUSTICE
 
 
          ¶1
 In this dependency and neglect proceeding, a division of the
 court of appeals allowed K.L.W. ("Father") to take
 the judicial equivalent of a mulligan[1] by reversing the juvenile
 court's adjudicatory judgment. We conclude that the
 division erred.
 
 
          ¶2
 The parties agree, as do we, that the juvenile court
 correctly found in 2021 that Father waived his
 statutory right to a jury trial by failing to appear for
 trial. However, everyone also agrees that the court
 incorrectly proceeded to adjudicate, by default,
 Father's five children, Kay.W., Kai.W., E.W., D.W., and
 S.W. (the "children"), as dependent or neglected
 with regard to him.
 
 
          ¶3
 About two years later, in 2023, the juvenile court corrected
 course by vacating the default judgment and scheduling a new
 adjudicatory trial. In that order, the court found that
 Father had waived his statutory right to a jury trial by
 failing to appear in 2021. Consequently, it scheduled the
 matter for an adjudicatory trial to the court. Twenty days
 passed between the issuance of that
 
 4
 
 order and the bench trial. Yet, Father took no steps during
 that timeframe to make a new demand for a jury trial. To the
 contrary, in a pretrial pleading, Father acknowledged,
 without objection, that the proceeding was set for an
 "adjudicatory court trial."
 
 
          ¶4
 At the beginning of the 2023 bench trial, however, when the
 court asked the parties if there were any preliminary matters
 it needed to address, Father stated, "for the
 record," that he objected to the finding of a waiver of
 his statutory right to a jury trial. The court did not
 respond, and the issue was not raised again. At the
 conclusion of the bench trial, the court adjudicated the
 children dependent or neglected as to Father. Father then
 appealed, and a division of the court of appeals reversed,
 concluding that Father's 2021 waiver of a jury didn't
 extend to the 2023 proceeding. People in Int. of
 Kay.W., No. 23CA2106, ¶¶ 18-19 (Aug. 29,
 2024).
 
 
          ¶5
 We now reverse the division. Even assuming, without deciding,
 that the 2021 waiver of Father's statutory right to a
 jury trial was not binding for the remainder of the case and
 thus did not bar him from reasserting his jury-trial right in
 the 2023 proceeding, Father still cannot prevail. Father
 never demanded a jury for purposes of the 2023 proceeding, as
 required by statute, section 19-3-202(2), C.R.S. (2024),
 
 5
 
 and rule, C.R.J.P. 4.3(a).[2] The only jury trial Father ever
 demanded was waived in 2021 by his failure to appear.
 
 
          ¶6
 Contrary to the division's determination, Father's
 "for the record" objection in 2023 was not a demand
 for a jury. And even if we could construe it as such-we
 cannot-it would fail as untimely because Father waited twenty
 days, until the morning of the bench trial, to advance it.
 Had the court sustained Father's objection in this
 expedited permanency planning case,[3] a time-sensitive matter, it
 would have unnecessarily delayed the proceeding, to the
 detriment of the children. And that, in turn, would have run
 counter to the best interests of the children, which take
 precedence in dependency and neglect proceedings.
 Additionally, granting Father's objection would have
 interfered with the court's orderly administration of
 justice and inconvenienced the witnesses.
 
 
          ¶7
 In the end, even if Father was entitled to make a new demand
 for a jury trial in 2023, he never did so, let alone in a
 timely fashion. And we are unwilling to conclude that his
 2021 demand for a jury trial was automatically revived post-
 
 6
 
 waiver when the juvenile court vacated the default judgment
 in 2023. Accordingly, the juvenile court correctly conducted
 a bench trial, and the division erred in reversing the
 adjudicatory judgment.
 
 
          I.
 Facts and Procedural History
 
 
          ¶8
 In May 2021, the Department of Human Services ("the
 Department") filed a petition alleging that the children
 were dependent or neglected with regard to Father. The
 petition contended that the children were at risk because
 Father's whereabouts were unknown and he was struggling
 with mental health conditions (including suicidal ideation)
 and substance use issues. Father was eventually located, and
 counsel was appointed for him. At a pretrial conference,
 Father denied the petition's allegations and requested a
 jury trial for the adjudicatory phase of the case. The
 juvenile court granted his request and scheduled the matter
 for a jury trial to commence on September 22, 2021.
 
 
          ¶9
 When Father failed to appear, the court determined that he
 had waived his statutory right to a jury trial, emphasizing
 its "heavy juvenile docket" and the need to avoid
 engaging in "gamesmanship" with parents who fail to
 appear for a jury trial, as such engagement "would delay
 significantly proceedings getting resolved within [the]
 expedited permanency planning or just regular permanency
 planning guidelines." The court then proceeded to
 adjudicate, by default, the children dependent or neglected
 with respect to Father "based on [the] failure to
 appear."
 
 7
 
 Further, the court adopted an interim treatment plan for
 Father and granted his counsel's motion to withdraw from
 the case.
 
 
          ¶10
 About eighteen months later, in March 2023, the Department
 moved for termination of Father's parental rights, and
 the court set the matter for a termination hearing. Shortly
 after the termination hearing commenced in late July 2023,
 Father's new counsel moved to vacate the 2021 default
 judgment pursuant to C.R.C.P. 60(b), arguing that the court
 had improperly adjudicated the children dependent or
 neglected by default. Father did not reassert his statutory
 right to a jury trial in this motion.
 
 
          ¶11
 The court (with a different judicial officer presiding)
 granted Father's motion on September 26, 2023, after the
 second day of the termination hearing.[4] It agreed with
 Father that "[t]he Children's Code does not
 authorize entry of a default judgment against a parent for
 failing to appear at the adjudicatory hearing." (Quoting
 People in Int. of K.J.B., 2014 COA 168, ¶ 25,
 342 P.3d 597, 601.) Thus, the court converted the remainder
 of the termination hearing into a new adjudicatory trial,
 which the court scheduled to commence twenty days later, on
 October 16.
 
 8
 
          ¶12
 Of particular relevance here, in its order granting
 Father's C.R.C.P. 60(b) motion, the court found that
 Father had "waived his right to a jury trial by failing
 to appear" at the 2021 trial. Accordingly, the court set
 the new adjudicatory trial as a bench trial. During the
 ensuing twenty days, Father did not make another demand for a
 jury trial. Quite the contrary, about a week before trial,
 Father filed an amended list of witnesses expressly stating,
 without complaint, that the matter was set for an
 "adjudicatory court trial."
 
 
          ¶13
 At the beginning of the first day of trial, however, when the
 court inquired as to whether there were any preliminary
 matters it needed to address, Father's counsel spoke as
 follows: "[F]or the record[,] I'm going to object to
 the [c]ourt's finding and waiver of jury
 trial."[5] Counsel didn't elaborate, and the
 court didn't comment further on the issue. Indeed, the
 matter was not discussed again. At the conclusion of the
 bench trial, the court adjudicated the children dependent or
 neglected as to Father.
 
 
          ¶14
 Father appealed. As pertinent here, he argued that the
 juvenile court erred in finding that he had waived his
 statutory right to a jury trial for purposes of the 2023
 trial by failing to appear for the 2021 trial.
 
 9
 
          ¶15
 A division of the court of appeals agreed with Father in an
 unpublished, unanimous opinion. Kay.W., ¶ 8.
 The division held that Father's waiver of his statutory
 right to a jury trial for failing to appear at the 2021 trial
 didn't extend to the 2023 trial. Id. at
 ¶¶ 18-19.
 
 
          ¶16
 First, the division explained that the "two adjudicatory
 trials were separate and distinct" because the 2023
 trial was a "completely new trial," not a
 continuation of the 2021 trial. Id. at ¶ 19. It
 then determined that the juvenile court's decision in
 2023 to set aside the 2021 default adjudication "put
 [F]ather in the same legal position" he was in before
 the 2021 trial. Id. Relying on C.R.C.P. 39(a),
 which, as relevant here, requires a jury trial unless such a
 trial is waived because "all parties demanding trial by
 jury fail to appear at trial," the division ruled that
 the juvenile court erred because the waiver could not have
 occurred before Father had been given an opportunity to
 appear "at trial" in 2023. Kay.W., ¶
 20. And because Father did appear at the 2023 trial,
 the division concluded that he could not have waived his
 statutory right to a jury trial for purposes of that
 proceeding. Id.
 
 
          ¶17
 Second, the division decided that, because the statutory
 right to a jury trial is a "substantial right[]"
 under C.R.C.P. 61, the error was not harmless.
 Kay.W., ¶ 21. It thus reversed the adjudication
 judgment and remanded the matter for
 
 10
 
 further proceedings. Id. at ¶ 24. Given this
 disposition, the division declined to address Father's
 remaining contentions on appeal. Id. at ¶¶
 21-23.
 
 
          ¶18
 The children's guardian ad litem (the "GAL")
 and the Department (collectively, "Petitioners")
 separately sought our review.[6] We granted their
 petitions.[7] Before analyzing the issues raised, we
 make a pit stop to review some elemental legal tenets.
 
 
          II.
 Basic Legal Principles
 
 
          ¶19
 "'Dependency and neglect proceedings are civil in
 nature' and follow the Colorado Children's Code
 ...." People v. Johnson, 2017 COA 11, ¶
 32, 446 P.3d 826, 831 (quoting People in Int. of
 Z.P., 167 P.3d 211, 214 (Colo.App. 2007)); see also
 People v. D.A.K., 596 P.2d 747, 751 (Colo. 1979)
 (stating that a dependency and neglect proceeding is civil in
 nature and involves three parties-the parents, the
 
 11
 
 child, and the state); C.R.J.P. 1 (noting that proceedings
 brought in juvenile court are "civil in nature").
 Accordingly, there is no right to a jury trial grounded in
 the Colorado Constitution in these cases. Kaitz v. Dist.
 Ct., 650 P.2d 553, 554 (Colo. 1982) ("In Colorado
 there is no constitutional right to a trial by jury in a
 civil action."); People in Int. of C.C., 2022
 COA 81, ¶ 11, 519 P.3d 762, 765. However, our General
 Assembly has provided a statutory right to a jury
 trial at the adjudicatory hearing stage of dependency and
 neglect cases. § 19-3-202(2) ("[A]ny respondent . .
 . may demand a trial by jury of six persons at the
 adjudicatory hearing ....").
 
 
          ¶20
 Generally, when juvenile matters are "not governed
 by" the Colorado Rules of Juvenile Procedure or the
 Children's Code, they are "conducted according to
 the Colorado Rules of Civil Procedure." C.R.J.P. 1;
 see also K.J.B., ¶ 9, 342 P.3d at 599 (same).
 Thus, when the Colorado Rules of Juvenile Procedure and the
 Children's Code are silent on an issue, the Colorado
 Rules of Civil Procedure may kick in.
 
 
          ¶21
 As relevant here, C.R.J.P. 4.3(a) states that a parent must
 demand a jury trial "[a]t the time the allegations of a
 petition are denied"; otherwise, the right is
 "deemed waived." No other rule in the Colorado
 Rules of Juvenile Procedure or the Children's Code
 further discusses the statutory right to a jury trial or its
 waiver once the right has been invoked.
 
 12
 
          ¶22
 C.R.C.P. 39, however, sets forth the circumstances under
 which such waiver may occur, including, as pertinent here,
 when "all parties demanding trial by jury fail to appear
 at trial." C.R.C.P. 39(a). As the division implicitly
 acknowledged, the waiver provisions of C.R.C.P. 39 are much
 more comprehensive than those of C.R.J.P. 4.3(a) and the
 Children's Code and thus apply in dependency and neglect
 cases.
 
 
          III.
 Analysis
 
 
          ¶23
 Petitioners argue that Father's 2021 waiver of his
 statutory right to a jury trial was permanently binding in
 this case and thus barred him from reasserting that right for
 purposes of the 2023 trial. In their view, the juvenile
 court's 2023 decision to set aside the 2021 default
 adjudication had no impact on the waiver because the waiver
 occurred before the error ultimately responsible for the
 reversal of the first adjudication. Father counters that the
 order granting his C.R.C.P. 60(b) motion rendered the 2021
 adjudication void, which necessitated a "completely new
 adjudicatory trial," and since he didn't fail to
 appear at the 2023 trial, he was entitled to have a jury
 determine the issue of adjudication at that proceeding.
 
 
          ¶24
 At the outset, we lay out what is not in dispute:
 
 
 • In 2021, Father properly requested an adjudicatory
 jury trial but then failed to appear for that trial.
 
 13
 
 • Under Colorado law, Father's 2021 failure to
 appear constituted a waiver of his statutory right to a jury
 trial.
 
 
 • On the day Father failed to appear in 2021, the
 juvenile court incorrectly adjudicated, by default, the
 children dependent or neglected as to him.
 
 
 • In 2023, the juvenile court correctly granted
 Father's C.R.C.P. 60(b) motion and vacated the default
 judgment.
 
 
 • In the order vacating the default judgment, the
 juvenile court scheduled an adjudicatory bench trial after
 finding that Father had waived his statutory right to a jury
 trial in 2021.
 
 
          ¶25
 The question we confront is whether the juvenile court erred
 by ruling in its C.R.C.P. 60(b) order that Father had waived
 his jury-trial right for purposes of the 2023 trial by
 failing to appear for the 2021 jury trial. But the devil is
 in the details, as they say. So, we frame the issue before us
 more precisely as follows: Where, as here, a parent in a
 dependency and neglect proceeding waives the statutory right
 to a jury by failing to appear for an adjudicatory trial, and
 a default adjudicatory judgment is subsequently entered
 (incorrectly) and then vacated (correctly) pursuant to a
 C.R.C.P. 60(b) motion, does the waiver of the jury-trial
 right bar the parent from making a jury-trial demand at the
 second adjudicatory trial?
 
 
          ¶26
 Not surprisingly, neither the parties' research nor ours
 unearthed any cases in Colorado or elsewhere on point. There
 is a body of case law outside of Colorado, however, that
 addresses somewhat similar questions in the context of the
 constitutional right to a jury trial and a waiver of
 that right expressly executed by a party. Of course,
 here, we deal with a statutory right to a jury trial
 and an
 
 14
 
 implied waiver of that right as a result of a
 party's failure to appear for a jury trial. Nevertheless,
 we think it useful to briefly discuss the case law from other
 jurisdictions because the principles that can be extracted
 from it are enlightening.
 
 
          ¶27
 Most states appear to hold that the waiver of a jury trial is
 not operative for a subsequent trial in the same case.
 See generally H.D.W., Annotation, Waiver of
 Right to Jury Trial as Operative After Expiration of Term
 During Which It Was Made, or as Regards Subsequent
 Trial, 106 A.L.R. 203 (1937); H.H. Henry, Annotation,
 Withdrawal of Waiver of Right to Jury Trial in Criminal
 Case, 46 A.L.R.2d 919 (1956); see also In re Hulcher
 Servs., Inc., 568 S.W.3d 188, 190 (Tex. App. 2018)
 (referring to this as "[t]he long-standing majority
 rule"). And most federal courts appear to be on the same
 page. See generally Wesley Kobylak, Annotation,
 Waiver of Right to Trial by Jury as Affecting Right to
 Trial by Jury on Subsequent Trial of Same Case in Federal
 Court, 66 A.L.R. Fed. 859 (1984). We explore each
 category of cases in turn.
 
 
          ¶28
 Starting with the state cases, we note that the Washington
 Supreme Court has explained that, since a party waiving the
 right to a jury trial "likely does so without
 contemplating the possibility of a subsequent trial, the
 party does not intentionally 'waive' the
 right to trial by jury in the second trial." Wilson
 v. Horsley, 974 P.2d 316, 321-22 (Wash. 1999) (emphasis
 added); see also Tesky v. Tesky, 327 N.W.2d 706,
 708-09 (Wis. 1983) (same); People v. Hamm, 298
 N.W.2d 896, 899 (Mich. Ct. App. 1980) (same); Nedrow v.
 Mich.-Wis. Pipe Line Co., 70 N.W.2d 843, 844-45 (Iowa
 1955)
 
 15
 
 (same). The Oklahoma Supreme Court came to a similar
 conclusion, observing that, because the right to trial by
 jury in the second trial didn't exist and couldn't
 have been known at the time of the execution of the waiver,
 it could not have been impliedly waived. Seymour v.
 Swart, 695 P.2d 509, 512 (Okla. 1985); see also
 Horsley, 974 P.2d at 322 (same).
 
 
          ¶29
 In Nedrow, the Iowa Supreme Court reasoned that
 limiting a waiver of the right to a jury trial to the initial
 proceeding made sense given that circumstances may have
 changed by the time of the second proceeding-i.e., both the
 jury pool and the presiding judge could be different. 70
 N.W.2d at 844 ("[I]t is hardly fair to presume that by
 waiving a jury for one trial the parties intended to waive a
 jury for any further trial that may be had ....");
 see also Horsley, 974 P.2d at 322 (quoting
 Nedrow with approval). Even if a case is remanded
 for retrial in front of the same judge after reversal of a
 conviction, there may still be concerns with applying a
 waiver of the jury executed for purposes of the initial
 proceeding: A criminal defendant might well be opposed to a
 retrial in front of the same judge who previously reached a
 judgment of guilty.
 
 
          ¶30
 The weight of authority in the federal system aligns with
 these teachings from our sister state courts. More than a
 century ago, the Seventh Circuit held that a stipulation to
 waive the jury applied only in the pending trial because it
 "should not be presumed that the parties, in making the
 stipulation, had in mind any
 
 16
 
 possible subsequent trial." Burnham v. N. Chicago
 St. Ry. Co., 88 F. 627, 629 (7th Cir. 1898). Much more
 recently, in United States v. Lutz, 420 F.2d 414,
 416 (3d Cir. 1970), the Third Circuit held that, following a
 mistrial, the parties may assert or waive their jury-trial
 rights. Likewise, around the same time, the Sixth Circuit
 held that, unless the waiver of a jury trial explicitly
 includes the contingency of a retrial, the waiving party may
 demand a jury trial before the retrial. United States v.
 Groth, 682 F.2d 578, 580 (6th Cir. 1982). Along the same
 lines, in Zemunski v. Kenney, 984 F.2d 953, 954 (8th
 Cir. 1993), the Eighth Circuit ruled that, although a
 mistrial doesn't automatically extinguish a jury-trial
 waiver, a party may withdraw the waiver before the second
 trial. And, in a similar context, the Ninth Circuit declared
 that the waiver of some constitutional rights "should
 not, once uttered, be deemed forever binding."
 United States v. Mortensen, 860 F.2d 948, 950 (9th
 Cir. 1988) (concluding that consent to try a case before a
 magistrate judge instead of an Article III judge may be
 withdrawn following a mistrial).
 
 
          ¶31
 We reiterate that these state and federal cases are not on
 all fours with this case. For one thing, they implicated a
 constitutional right of heightened importance, the
 waiver of which "must be strictly construed."
 Horsley, 974 P.2d at 322; see also United States
 v. Lee, 539 F.2d 606, 609 (6th Cir. 1976) (indicating
 that the constitutional right to a jury trial in a criminal
 case is "a fundamental right, and a waiver should not be
 presumed"); Burnham, 88 F. at 629 ("The
 right of trial by jury
 
 17
 
 . . . is a high and sacred constitutional right in
 Anglo-Saxon jurisprudence .... A stipulation for the waiver
 of such right should therefore be strictly construed in favor
 of the preservation of the right."). For another, they
 were concerned with the prospect of applying a waiver of the
 jury-trial right, executed by a party for purposes of one
 trial, in an unforeseen subsequent trial. See, e.g.,
 Horsley, 974 P.2d at 322; Seymour, 695 P.2d
 at 512-13; Burnham, 88 F. at 629.
 
 
          ¶32
 So, what happens where, as here, there's an
 implied waiver (by operation of law) of a
 statutory right to a jury as a result of a
 party's failure to appear at trial? Is such a waiver
 forever binding in the case so as to bar the party from
 demanding a jury trial in any subsequent proceeding? And if
 it's not, does Father prevail here? These questions
 compel us to delve deeper into the case law.
 
 
          ¶33
 What is clear from the majority rule our research excavated
 is that, while a waiver of the right to a jury trial
 doesn't bar a jury-trial demand in a subsequent
 proceeding in the same case, the waiving party doesn't
 automatically receive a jury trial in the latter proceeding.
 See, e.g., Horsley, 974 P.2d at 322. Nor is
 the burden on the trial court to inquire at the subsequent
 proceeding whether the waiving party wishes to persist in the
 waiver or demand a jury trial. See, e.g.,
 id. No: If the waiving party wants a jury trial in
 the subsequent proceeding, the burden is on that party to
 request such a trial. See, e.g., id.
 
 18
 
          ¶34
 Moreover, any request for a jury trial in the subsequent
 proceeding must be timely made-i.e., without unnecessary
 delay. In Mortensen, the Ninth Circuit pointed out,
 in the context of a waiver of the right to a trial before an
 Article III judge, that a request to withdraw such a waiver
 for purposes of a retrial must be timely. 860 F.2d at 950. Of
 course, timeliness is not a concept that can be defined with
 "precise quantification." Id. Rather, its
 contours are necessarily set by the circumstances of each
 particular case. Id. The Mortensen court
 ultimately held that "a withdrawal motion is timely when
 granting the motion would not unduly interfere with or delay
 the proceedings." Id. Because Mortensen waited
 to seek withdrawal of his waiver until the morning of the
 retrial, the court concluded that he "clearly failed to
 satisfy the timeliness requirement." Id. at
 951.
 
 
          ¶35
 Notably, the Ninth Circuit was troubled by the fact that
 Mortensen's actions up until the morning of the retrial
 were inconsistent with his last-minute request to withdraw
 his waiver. Id. Specifically, Mortensen allowed the
 matter to be scheduled in front of a magistrate, set a date
 for the filing of pretrial motions to the magistrate,
 submitted a material witness warrant indicating the retrial
 would be in front of the magistrate, advanced a request to
 dismiss in front of the magistrate that made no mention of
 his desire to withdraw his waiver, and sought and obtained a
 continuance from the magistrate. Id.
 
 19
 
          ¶36
 In the same vein, in Zemunski, the Eighth Circuit
 reaffirmed that a defendant may move to withdraw a jury
 waiver following a mistrial only if the request is timely.
 984 F.2d at 954. Applying the definition of timeliness from
 Mortensen, the court concluded that Zemunski's
 request to withdraw was untimely because he inexplicably
 waited until the first day of the retrial to make it.
 Id. The court reasoned that, like the waiver itself,
 which was made on the first day of the initial trial, the
 request to withdraw appeared to be dilatory in nature.
 Id.
 
 
          ¶37
 Lastly, in Talbert v. State, 529 S.W.3d 212, 214
 (Tex. App. 2017), the Court of Appeals of Texas cautioned
 that a criminal defendant's request to withdraw a jury
 waiver must be made "sufficiently in advance of trial
 such that granting the request will not: (1) interfere with
 the orderly administration of the business of the court, (2)
 result in unnecessary delay or inconvenience to witnesses, or
 (3) prejudice the State." The court determined that the
 trial court did not abuse its discretion in denying
 Talbert's motion to withdraw his jury waiver because he
 filed the motion on the day of trial, the motion was not
 supported with evidence addressing the aforementioned
 concerns, and the record supported "the trial
 court's finding that withdrawal would have interfered
 with the orderly administration of the court's
 business." Id. at 216.
 
 
          ¶38
 Aided by this guidance, we turn back to the issues we agreed
 to review. For the reasons we articulate, we conclude that
 the division erred.
 
 20
 
          IV.
 Application
 
 
          ¶39
 We need not decide whether Father's 2021 waiver of his
 jury-trial right was, on the one hand, forever binding in
 this case, thus barring him from reasserting his jury-trial
 right in 2023 as Petitioners contend, or, on the other,
 limited to the 2021 trial, and thus inoperative at the 2023
 proceeding as Father asserts. And consistent with judicial
 restraint, we abstain from doing so.
 
 
          ¶40
 Father cannot prevail regardless of which side is right. If
 Petitioners are correct, the analysis is simple: Father's
 waiver of his jury-trial right as a result of failing to
 appear in 2021 was permanently binding in this case and
 therefore precluded him from demanding a jury trial for
 purposes of the 2023 proceeding. Under this rationale, once a
 party fails to appear for an adjudicatory jury trial in a
 case, the party is barred from ever demanding a jury trial in
 the case. On the flip side of the coin, if Father is
 correct-which we assume solely for purposes of our
 analysis-then his 2021 waiver was not forever binding in this
 case. While this makes the analysis a little more
 complicated, it still doesn't get Father his desired
 fresh start.
 
 
          ¶41
 In 2023, when the juvenile court vacated the default
 judgment, it returned the case to the procedural posture it
 was in right before the default judgment entered in 2021. It
 was as if the default judgment had never entered. The case in
 2023 had to resume the procedural posture from two
 years earlier, where the case
 
 21
 
 was halted: There was a request by the Department to
 adjudicate the children dependent or neglected as to Father,
 Father had demanded a jury trial, and Father had then waived
 his right to a jury trial. Even limiting the effect of the
 waiver to the 2021 proceeding, there was no active
 demand for a jury trial. To be sure, Father was free to
 make a new jury-trial demand for purposes of the 2023
 proceeding. But it was incumbent on him to do so, as required
 by section 19-3-202(2) and C.R.J.P. 4.3(a) and as supported
 by the majority rule we've examined. Because he made no
 such demand, the case proceeded to the bench trial that would
 have been conducted in 2021 if the juvenile court hadn't
 erroneously entered a default judgment after he failed to
 appear.
 
 
          ¶42
 The division recognized that the vacatur of the default
 judgment in 2023 put Father "in the same legal position
 . . . he was in before the 2021 adjudicatory trial."
 Kay.W., ¶ 19. But the division seemed to assume
 that Father was automatically entitled to have a jury trial
 in 2023: "C.R.C.P. 39(a) requires that a jury trial be
 held unless 'all parties demanding trial by jury
 fail to appear at trial.' . . . And because [F]ather did
 appear at the 2023 adjudicatory trial, he didn't waive
 his right to a jury." Id. at ¶ 20
 (emphasis added and original emphases omitted). In giving
 Father a do-over in this case, the division treated his
 waiver as lacking binding effect for purposes of the 2023
 trial (which we assume was correct). Id. at
 ¶¶ 19-20. But that only meant that Father was
 free to reassert his right to a jury trial, not that
 
 22
 
 Father was automatically entitled to have a jury trial. The
 division was wrong to reflexively revive Father's 2021
 demand for a jury trial after the waiver that resulted from
 his failure to appear.
 
 
          ¶43
 No case that we have found in our research-in Colorado or
 elsewhere, in state court or federal court-supports the
 division's analysis. Even the cases in the majority camp
 (i.e., the cases most favorable to Father), which decline to
 deem the waiver of a jury as binding in a subsequent
 proceeding in the same case, make clear that the waiving
 party must assert the jury-trial right in the subsequent
 proceeding. See, e.g., Horsley, 974 P.2d at
 322 ("Parties who waive the right to a jury trial are
 free to assert this right following a
 mistrial." (emphasis added)); Lutz, 420 F.2d at
 416 (noting that, following a mistrial, the parties may
 assert or waive their jury-trial rights); Groth, 682
 F.2d at 580 (stating that, unless the waiver of a jury trial
 explicitly includes the contingency of a retrial, the waiving
 party may demand a jury trial before the second trial).
 
 
          ¶44
 Importantly, following his waiver of a jury in 2021, section
 19-3-202(2) and C.R.J.P. 4.3(a) required Father to demand a
 jury trial again in 2023. § 19-3-202(2) ("[A]ny
 respondent . . . may demand a trial by jury of six persons at
 the adjudicatory hearing ....); C.R.J.P. 4.3(a) ("[A]
 respondent . . . may demand . . . a jury of not more than
 six. Unless a jury is demanded or ordered, it shall be deemed
 waived."). Father failed to comply with the statute and
 the rule.
 
 23
 
          ¶45
 To the extent that the division considered the 2023 trial to
 be a "separate and distinct" proceeding from the
 2021 proceeding during which the jury was waived,
 Kay.W., ¶ 19, we're not sure why that
 wouldn't require Father to make a new demand for a jury
 trial in accordance with section 19-3-202(2) and C.R.J.P.
 4.3(a). True, C.R.J.P. 4.3(a) states that a party may demand
 a trial by jury "[a]t the time the allegations of a
 petition are denied," and, as of the 2023 proceeding,
 the petition's allegations had been denied for two years.
 But the statute doesn't tether a jury demand to the
 denial of the allegations, and we decline to construe the
 rule as dispensing with the requirement for a jury demand
 where, as here, a trial is conducted after the waiver of a
 previous demand for a jury trial. Thus, Father should have
 demanded a jury as provided in section 19-3-202(2) and
 C.R.J.P. 4.3(a).
 
 
          ¶46
 Having waived his right to a jury trial in 2021-a waiver that
 preceded, and was thus unaffected by, the order that vacated
 the default judgment and required a new adjudicatory
 trial-there was no active demand for a jury trial on which
 Father could rely in 2023. Therefore, contrary to the
 division's suggestion, there was also no jury-trial right
 for Father to preserve by simply appearing at the 2023 trial.
 
 
          ¶47
 We acknowledge that on the morning of the 2023 trial, in
 response to the juvenile court's inquiry about
 preliminary matters, Father objected, "for the
 
 24
 
 record," to the finding of a waiver. But we disagree
 with the division that this was the equivalent of a demand
 for a jury trial.
 
 
          ¶48
 Besides, even if Father's objection could reasonably be
 deemed a jury demand-it cannot-it would still fall woefully
 short. Father waited twenty days, until the morning of trial,
 to make his objection. And he provided no explanation for his
 tardiness.[8] What's more, his actions preceding the
 start of the 2023 trial belied his objection. In an amended
 witness list filed just one week before trial, Father
 expressly acknowledged, without protestation, that the matter
 was set for a trial to the court. Why did Father seem to
 implicitly accept a bench trial a week before trial but not
 on the morning of trial?
 
 
          ¶49
 Significantly, had the court sustained Father's
 objection, it inevitably would have resulted in an
 unnecessary delay of the proceeding, to the detriment of the
 children. This would have been unacceptable because the
 children's best interests are of preeminent importance in
 this proceeding. Of course, the expedited placement of young
 children is expressly among those best interests. Indeed, the
 Children's Code's preamble, § 19-1-102(1.6),
 C.R.S. (2024), emphasizes the need for "an expedited
 placement procedure to ensure that children under the age of
 six
 
 25
 
 years who have been removed from their homes are placed in
 permanent homes as expeditiously as possible." As
 mentioned, four out of the five children involved in this
 case were under six years of age at the time the dependency
 and neglect petition was filed. Consistent with our
 legislature's declaration, the juvenile court had a duty
 to "proceed with all possible speed to a legal
 determination that [would] serve the best interests of the
 child[ren]." § 19-1-102(1)(c). And, although it is
 not lost on us that section 19-3-202(2) recognizes a
 parent's right to an adjudicatory jury trial, that
 statute nowhere endorses or even permits dilatory tactics.
 
 
          ¶50
 Additionally, granting Father's objection would have
 interfered with the court's administration of justice and
 inconvenienced the witnesses. The court would have been
 required to postpone the matter so it could then summon
 prospective jurors for the case on a future date. All
 witnesses would then have been required to return for a jury
 trial.
 
 
          ¶51
 Under these circumstances, Father's objection was too
 little, too late. Thus, the juvenile court did not err in
 holding an adjudicatory bench trial.
 
 
          V.
 Conclusion
 
 
          ¶52
 For the foregoing reasons, we reverse the division's
 judgment. We remand the case so the division may entertain
 Father's remaining contentions.
 
 
 ---------
 
 
 Notes:
 
 
 [1] A "mulligan" is "a free
 shot sometimes given a golfer in informal play when the
 previous shot was poorly played." Mulligan,
 Merriam-Webster Dictionary,
 https://www.merriam-webster.com/dictionary/mulligan
 [https://perma.cc/ 5BQW-GVMF]. In common parlance, a
 "mulligan" refers to a second chance: an
 "opportunity to start again after an initial
 failure." Mulligan, Collins English Dictionary,
 https://
 www.collinsdictionary.com/dictionary/english/mulligan
 [https://perma.cc/D7CT-MJP5].
 
 
 [2] C.R.C.P. 38 addresses jury-trial
 demands in civil cases, including the procedures that must be
 observed. We need not decide here whether the rule applies to
 dependency and neglect cases.
 
 
 [3] An expedited permanency planning case
 is one in which the juvenile court must follow specific
 expedited timelines and procedures "for the permanent
 placement of children under the age of six years."
 § 19-1-123(1)(a), C.R.S. (2024). Four of the children
 had not yet celebrated their sixth birthday at the time the
 dependency and neglect petition was filed.
 
 
 [4] The termination hearing was scheduled
 to take place over several noncontiguous days during a period
 spanning a handful of months.
 
 
 [5] Father's counsel did not specify
 whether his "for the record" objection was premised
 on the finding in 2021 that his failure to appear constituted
 a waiver or the finding in 2023 that he'd previously
 waived a jury.
 
 
 [6] The division rejected the preservation
 argument advanced by the GAL. Id. at ¶¶
 14-15. The GAL reraises that argument here. That ship,
 however, sailed when we accepted the only two issues raised
 in Petitioners' requests for review, neither of which
 dealt with preservation.
 
 
 [7] The issues upon which we granted
 certiorari are different framings of what is loosely the same
 question:
 
 
 1. Whether the court of appeals correctly ruled that
 father regained his right to a jury trial for adjudication
 after he waived the statutory right by
 non-appearance.
 
 
 2. Whether the division erred in finding that father
 did not waive his statutory right to an adjudicatory jury
 trial after he failed to appear for the first-scheduled
 trial, but where the judgment from the hearing was later
 vacated and another hearing was scheduled.
 
 
 [8] Petitioners maintain that Father
 should have renewed his demand for a jury trial in his
 C.R.C.P. 60(b) motion. While this may have been ideal, we do
 not hold it against Father that he failed to do so.
 
 
 ---------