23CA2106 Peo in Interest of KW 08-07-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2106
El Paso County District Court No. 21JV365
Honorable Robin Chittum, Judge

The People of the State of Colorado,

Appellee,

In the Interest of Kay.W., Kai.W., E.W., D.W., and S.W., Children,

and Concerning K.L.W.,

Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE LUM
Harris and Brown, JJ., concur

Prior Opinion Announced August 29, 2024, Reversed in 24SC621

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 7, 2025

Kenneth R. Hodges, County Attorney, Melanie Douglas, Contract Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Michael Kovaka, Littleton, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, K.L.W. (father) appeals the juvenile court's judgment adjudicating Kay.W., Kai.W., E.W., D.W., and S.W. (the children) dependent or neglected. In an unpublished opinion, we reversed the adjudicatory judgment and the dispositional order based on our conclusion that the juvenile court erred when it found that father had waived his right to a jury at a second adjudicatory trial by failing to appear at his first adjudicatory jury trial, even though the prior adjudication had since been set aside. *See People in Interest of Kay.W.*, (Colo. App. No. 23CA2106, Aug. 29, 2024) (not published pursuant to C.A.R. 35(e)).

¶ 2    The children's guardian ad litem (GAL) and the Department of Human Services (Department) filed petitions for certiorari, and in *People in Interest of Kay.W. v. K.L.W.*, 2025 CO 48, the Colorado Supreme Court reversed this division. The supreme court assumed, without deciding, that father's implied waiver in his first adjudicatory trial didn't bar him from reasserting his jury trial right in the second adjudicatory trial. However, the court also held that because father *didn't* reassert that right (or even if he did, he didn't do so in a timely fashion), the juvenile court correctly conducted a bench trial for the second adjudicatory trial. *Id.* at ¶¶ 5-7.

¶ 3    Accordingly, the supreme court remanded the case to address father's remaining contention on appeal: whether the juvenile court erred when it adjudicated the children dependent or neglected based on facts not alleged in the petition in dependency and neglect. Because the juvenile court didn't reversibly err, we affirm the judgment adjudicating the children dependent or neglected.

## I.    Background

¶ 4    As relevant here, in 2021, the Department filed a dependency and neglect petition concerning the children. The petition alleged that the children's welfare was at risk due to father's history of mental health issues.

¶ 5    After the second adjudicatory trial in 2023, the court adjudicated the children dependent or neglected. The court found that the Department had proved by a preponderance of the evidence that the children's environment was injurious to their welfare based upon father's history of mental health concerns. The court didn't sustain the petition as to father under any other statutory provisions.

## II. Sufficiency of the Evidence

### A. Preservation, Standard of Review, and Applicable Law

¶ 6     Father asserts he preserved his argument that the juvenile court couldn't adjudicate the children dependent or neglected based on facts not alleged in the petition when his counsel raised it during closing arguments at the second adjudicatory trial. The Department agrees that the argument is preserved. However, the GAL asserts that father failed to preserve this issue and otherwise impliedly gave his consent to the juvenile court's consideration of additional facts in evidence.

¶ 7     We need not decide this issue because even if we assume, without deciding, that father preserved his claim, we discern no reversible error.

¶ 8     The Department further disagrees with father and the GAL regarding which standard of review applies to our review of a sufficiency of the evidence claim. The Department asserts that we should review the court's findings only for clear error. *See People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo. 1982). Father and the GAL contend, however, that the resolution of this issue involves a mixed question of fact and law. *See People in Interest of S.N. v. S.N.*,

2014 CO 64, ¶ 21. Father further argues that the ultimate question is whether the court considered facts not alleged in the petition; thus, he argues, the court's factual findings should be reviewed under an abuse of discretion standard, and the legal issues should be reviewed de novo. *See id.*; *People in Interest of T.E.R.*, 2013 COA 73, ¶ 34.

¶ 9 We also do not need to resolve this dispute because, regardless of which standard we apply, we again discern no reversible error.

¶ 10 "The purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence, and whether the status of the . . . child . . . warrants intrusive protective or corrective state intervention into the familial relationship." *People in Interest of A.M.*, 786 P.2d 476, 479 (Colo. App. 1989). In determining whether the evidence is sufficient to sustain an adjudication, we draw every fair inference from the evidence in favor of the juvenile court's decision. *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009).

¶ 11 As relevant here, a child may be dependent or neglected when the child's environment is injurious to their welfare. § 19-3-

102(1)(c), C.R.S. 2024. An injurious environment exists when a child is in a situation that is likely harmful to them. *People in Interest of J.G. v. M.L.*, 2016 CO 39, ¶ 26.

¶ 12    A petition in dependency and neglect must "set forth plainly the facts which bring the child within the court's jurisdiction." § 19-3-502(2), C.R.S. 2024. A parent must have notice of the State's allegations and the ability to challenge them at an adjudicatory trial. *J.G.*, ¶ 15; *see also* §§ 19-3-502(2), 19-3-505(1), C.R.S. 2024. But, when "it appears that the evidence presented at the hearing discloses facts not alleged in the petition, the court may proceed immediately to consider the additional or different matters raised by the evidence if the parties consent." § 19-3-505(4)(a).

### B.    Analysis

¶ 13    The facts alleged in the petition in connection with father's mental health issues referenced an encounter he had with law enforcement in April 2021 regarding a purported suicide attempt. Father contends that the petition only put him on notice that this single incident of suicidal ideation would be discussed in the adjudicatory trial.

¶ 14    On appeal, he argues that during the second adjudicatory trial, the ongoing caseworker made only a brief reference to the April 2021 alleged suicide attempt. He claims that the bulk of the Department's evidence related to his later mental health struggles in 2023, which were not included in the petition. And he asserts that the court improperly relied solely on those later facts to adjudicate the children dependent or neglected. We disagree.

¶ 15    It's true that the only mental health incident specifically described in the petition was a single purported suicide attempt, mentioned only once during the ongoing caseworker's testimony at the second adjudicatory trial. However, the petition clearly stated that "[f]ather . . . has a *history* of mental health issues which places the welfare of the [c]hildren . . . at risk." (Emphasis added.) Therefore, we conclude father had sufficient notice that his history of mental health issues could be discussed.

¶ 16    Additionally, contrary to father's assertions on appeal, testimony about father's mental health *prior* to the petition in dependency and neglect filing was also considered. At the second adjudicatory trial, the caseworker testified that mental health concerns were central to this case and that "through the intake

caseworker's investigation, [father] had disclosed . . . that he had over 20 suicidal ideations." These incidents occurred right around the time the case began and prior to the filing of the petition. The caseworker further testified that the escalated behaviors that came with father's mental health concerns posed a detrimental risk to the children if father had them in his care.

¶ 17 Father confirmed his history of mental health struggles, including a diagnosis of post-traumatic stress disorder and problems with anger and impulse control. In describing that history, father referenced traumatic incidents from his childhood, his time in the military, and a prior criminal case — all of which also occurred prior to the filing of the petition.

¶ 18 Further, while the juvenile court referenced a later post-petition mental health incident in its findings, we cannot conclude that the court solely relied on that incident to adjudicate the children dependent or neglected. The court found that father's "mental health issues place the welfare of the children at risk" and noted that "*the best example* of that" occurred in September 2023. (Emphasis added.) The court also found, with record support, that

father struggled with "impulsivity," "trauma reactions," and "hypervigilan[ce]," which stemmed from his time in the military.

¶ 19    The preponderance of the evidence standard requires only that the evidence must "preponderate over, or outweigh, evidence to the contrary." *City of Littleton v. Indus. Claim Appeals Off.*, 2016 CO 25, ¶ 38 (quoting *Mile High Cab, Inc. v. Colo. Pub. Utils. Comm'n*, 2013 CO 26, ¶ 14).  It is not "an especially high degree of proof." *Id.* Accordingly, and drawing every fair inference from the evidence in favor of the juvenile court's decision, we cannot conclude that the court reversibly erred in adjudicating the children dependent or neglected.  *See S.G.L.*, 214 P.3d at 583.

### III.    Disposition

¶ 20    The judgment is affirmed.

JUDGE HARRIS and JUDGE BROWN concur.