24CA0358 Peo in Interest of KW 12-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0358
El Paso County District Court No. 21JV365
Honorable Robin Chittum, Judge

The People of the State of Colorado,

Appellee,

In the Interest of Kay.W., Kai.W., E.W., D.W., and S.W., Children,

and Concerning K.W.,

Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Brown and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 24, 2025

Kenneth R. Hodges, County Attorney, Melanie E. Gavisk, Assistant County Attorney, Adrianne A. Brambila, Assistant County Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Michael Kovaka, Office of Respondent Parents' Counsel, Littleton, Colorado, for Appellant

¶ 1    K.W. (father) appeals the termination of his parent-child legal relationships with K.W., K.W., E.W., D.W., and S.W. (the children). We affirm.

## I.    Background

¶ 2    In May 2021, the El Paso County Department of Human Services filed a petition in dependency and neglect after father and the children's mother — who had mental health and substance abuse problems impacting the children's safety — threatened or attempted suicide.  The children were placed in foster care.

¶ 3    Father didn't appear for the adjudicatory jury trial he had requested, and the juvenile court adjudicated the children dependent and neglected with regard to father by default.  The court then entered a treatment plan for father.  Father's treatment plan required him to (1) maintain stable housing and provide for the children's basic needs; (2) participate in a domestic violence assessment and comply with any recommendations; (3) maintain contact with case professionals; (4) participate in a parenting program; (5) participate in family time; (6) complete a substance abuse assessment and follow any recommendations; and (7) refrain from any criminal activity.

1

¶ 4     More than a year after his treatment plan had been adopted, the court vacated the default adjudication.  The court concluded that adjudication by default was improper because father had been "represented by counsel and reasonably relied on counsel protecting his interests."  After a new adjudicatory hearing on October 16 and 18, 2023, during which the court determined that father had previously waived his right to a jury trial, the court again adjudicated the children dependent and neglected and adopted a new treatment plan for father.

¶ 5     Father's new treatment plan required him to (1) maintain stable housing and provide for the children's basic needs; (2) participate in a domestic violence assessment and comply with any recommendations; (3) participate in a parenting program; (4) participate in family time; (5) complete a substance abuse assessment and follow any recommendations; and (6) complete a psychological and psychiatric medication evaluations and follow any recommendations.  The record shows that at least some services were in place for father when the court adopted the second treatment plan.

¶ 6    The Department filed father's treatment plan on November 1, 2023. The same day, the Department also filed a new motion to terminate father's parental rights as to K.W., K.W., and S.W. Later that month, the guardian ad litem (GAL) filed a new motion to terminate father's parental rights as to E.W. and D.W. After a hearing in January 2024, the court terminated father's parental rights as to all the children.

¶ 7    Father appealed the new adjudication, arguing that his jury trial waiver didn't apply to the second proceeding, and a division of this court reversed. *See People in Interest of K.W.*, (Colo. App. No. 23CA2106, Aug. 29, 2024) (not published pursuant to C.A.R. 35(e)). The supreme court granted certiorari. *People in Interest of Kay.W. v. K.L.W.*, (Colo. No. 24SC621, Nov. 25, 2024) (unpublished order). This court nostra sponte stayed father's appeal in this case pending a decision by the supreme court.

¶ 8    In *People in Interest of Kay.W. v. K.L.W.*, 2025 CO 48, ¶¶ 5-7, 33-34, the supreme court concluded that the trial court didn't err because father was required by section 19-3-202(2), C.R.S. 2025, and C.R.J.P. 4.3(a) to timely request a jury trial in his new adjudication proceeding, which, it concluded, he didn't do. Having

3

lifted the stay in the present case, we now address father's contentions relating to the termination proceeding.

## II. Reasonable Efforts

¶ 9 Father first contends that the Department failed to make reasonable efforts to rehabilitate him and reunify his family. We aren't convinced.

### A. Applicable Law and Standard of Review

¶ 10 Before the juvenile court may terminate parental rights under section 19-3-604(1)(c), C.R.S. 2025, the state must make reasonable efforts to rehabilitate the parent and reunite the family. §§ 19-3-100.5(1), 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2025. "Reasonable efforts" means the "exercise of diligence and care" for a child who is in out-of-home placement. § 19-1-103(114). This standard is satisfied by the provision of services in accordance with section 19-3-208. § 19-1-103(114); *see also People in Interest of C.T.S.*, 140 P.3d 332, 335 (Colo. App. 2006).

¶ 11 The services must be "appropriate to support the parent's treatment plan." *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). But the parent is responsible for using those

services to obtain the assistance needed to comply with the plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).

¶ 12    Whether the Department satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error but review de novo its legal determination, based on those findings, as to whether the Department satisfied its reasonable efforts obligation. *Id.*

## B.    Analysis

¶ 13    Father argues that the trial court erroneously concluded that the Department made reasonable efforts to rehabilitate him because it "dedicated its efforts to having [f]ather's rights terminated as quickly as possible." Specifically, father suggests that the Department's filing of a motion to terminate his parental rights indicates that it didn't make the reasonable efforts required to address father's mental health issues. We perceive no error.

¶ 14    We acknowledge father's assertions that the court improperly (1) held its reasonable efforts determination "in abeyance" after voiding his first adjudication and dispositional orders and (2) relied

on evidence of his lack of compliance with his first treatment plan. But we conclude that the record supports the court's order.

¶ 15　　As an initial matter, case law suggests that the court wasn't required to disregard father's lack of compliance with his first treatment plan. *See People in Interest of S.N.*, 2014 COA 116, ¶¶ 18-19 (facts about a parent's past treatment of his other children, as well as facts about a parent's condition or conduct, may be considered at adjudication, but aren't dispositive); *see also People in Interest of K.D.*, 155 P.3d 634, 637 (Colo. App. 2007) (services aren't required if previous efforts in past cases have met with no success because the state need not persist with futile efforts). Nevertheless, in this case, the record of the Department's efforts since the adoption of the new treatment plan, standing alone, adequately supports the court's reasonable efforts determination.

¶ 16　　As part of the new treatment plan, the Department referred father to a domestic violence therapist with whom he had worked in the past. But father didn't re-engage with the therapist after the adoption of his new plan. The caseworker testified that under the new treatment plan, like the old one, life skills workers were

available to help father with his parenting skills. But father didn't engage in life skills services under the new treatment plan. At the time of the termination hearing, father was "on the verge of being discharged from his current life skills worker." Father had communicated with the life skills worker only "twice in the last month and a half, two months . . . when they should be meeting a minimum one to two times a week."

¶ 17    The caseworker testified that both father's life skills workers and his visitation supervisors "still have concerns with [father's] parenting." And the Department referred father to family therapy, but father didn't show up for appointments.

¶ 18    Upon adoption of the new treatment plan, the Department also referred father for a new substance abuse treatment intake appointment. Father didn't complete the intake paperwork and didn't communicate with the provider again. The Department likewise referred him for a medications assessment. The medications assessor testified that he tried to contact father using the phone number provided. Although father made an appointment, he didn't show up for that session. At the time of the termination hearing, father hadn't rescheduled the appointment.

Finally, the Department found father an appropriate individual therapist who "went above and beyond to try to get things set up with [father]." But father never even completed intake paperwork for that provider, let alone engaged in therapy.

¶ 19    The record evidence thus supports the court's conclusion that the Department made reasonable efforts to rehabilitate father after the court adopted father's new treatment plan.

¶ 20    We aren't persuaded otherwise by father's argument that the Department's filing of its motion to terminate is evidence of its lack of reasonable efforts.

¶ 21    The filing of a termination motion doesn't, by itself, indicate a lack of reasonable efforts. No statute prescribes a minimum time period between the date a court adopts a treatment plan and the date a termination motion may be filed. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007). Regardless, the Department is obligated to provide reasonable efforts before and after the filing of a termination motion. *See* § 19-3-604(2) (at the *hearing on the motion to terminate,* the court is required to consider whether reasonable efforts have been made to rehabilitate the parents).

### III.  Reasonable Amount of Time

¶ 22    Father also contends that the Department didn't provide him with a reasonable amount of time to become fit.  We disagree.

### A.  Applicable Law and Standard of Review

¶ 23    The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent hasn't complied with an appropriate, court-approved treatment plan or the plan hasn't been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c).

¶ 24    An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. *People in Interest of D.P.,* 160 P.3d 351, 353 (Colo. App. 2007). Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental needs and conditions. *People in Interest of A.J.,* 143 P.3d 1143, 1152 (Colo. App. 2006).  A parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs

and, therefore, may also be considered in determining unfitness." *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 25 A parent must be afforded a reasonable amount of time to work on a treatment plan before the juvenile court terminates parental rights. *D.Y.*, 176 P.3d at 876-77. In determining whether a parent's conduct or condition is likely to change within a reasonable time and whether the parent can become fit within a reasonable time, the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003).

¶ 26 The determination of what constitutes a reasonable period is fact-specific and varies from case to case. *D.Y.*, 176 P.3d at 876; *see also People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24 (the court may look to various case-specific factors). These factors may include the parent's social history and the chronic or long-term nature of the parent's conduct or condition. *S.Z.S.*, ¶ 24. In any case a reasonable time isn't an indefinite time, and it must be determined by considering the child's physical, mental, and

emotional conditions and needs. *Id.* at ¶ 25. As in this case, when a child is under six years old, the juvenile court must also consider the expedited permanency planning provisions, which require that the child be placed in a permanent home as expeditiously as possible. *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2025.

¶ 27 It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence and to assess witness credibility. *People in Interest of A.J.*, 243 P.3d 244, 249-50 (Colo. 2010).

¶ 28 Whether a juvenile court properly terminated parental rights presents a mixed question of law and fact because it involves application of the termination statute to evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. "We review the juvenile court's findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support." *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. We review de novo the juvenile court's legal conclusions. *See id.*; *A.S.L.*, ¶ 8.

## B.  Analysis

¶ 29    Father argues that the juvenile court erred by concluding that he couldn't become a fit parent within a reasonable time because it "erroneously consider[ed] [f]ather's treatment plan during the entirety of the case," instead of focusing solely on the time after the court adopted the new treatment plan.  Father also suggests that the court erred by reaching its conclusion "eleven and one-half months before the plan's estimated completion date."

¶ 30    We acknowledge that the court's language — that the *parents'* condition isn't likely to change within a reasonable time because "it hasn't changed in almost three years" — took into account time before father's new treatment plan was adopted.  But because father's lack of compliance with his first treatment plan is part of his social history and indicates the long-term nature of his conduct, the court didn't err by considering it when determining that he had had a reasonable amount of time to comply with treatment.  *See S.Z.S.*, ¶¶ 24-25.

¶ 31    Even if this were not the case, the written order emphasized father's lack of compliance since the adoption of his new treatment plan.  In particular, the court noted that father "had a new

treatment plan . . . and he had the opportunity to address the issues in the case." The court then described, as we have already discussed, father's lack of compliance with his medication evaluation, individual therapy, family therapy, domestic violence treatment, family time, and substance abuse treatment plan objectives. The court noted that, at the time of his termination hearing, father was "still struggling with the issues that gave rise to this case."

¶ 32   We also acknowledge that another division of this court has concluded that a department's treatment plan completion date is "*some* evidence of what the department and the court believe are reasonable times to comply." *D.Y.*, 176 P.3d at 877 (emphasis added). In *D.Y.*, a department filed a motion to terminate weeks after the court adopted a treatment plan, despite the plan's completion date affording many more months to the parent. *Id.* But just because the completion date provides some evidence of a reasonable time to comply doesn't mean the court necessarily errs when it doesn't rely on the completion date provided in the treatment plan. *A.J.*, 243 P.3d at 249-50 (the juvenile court has discretion to weigh the evidence). Moreover, this case is factually

distinguishable from *D.Y.* Whereas in *D.Y.* the children were in out-of-home placement for only eight months, the court in this case relied on the fact that the young children hadn't found permanency for almost three years. The children, the court concluded, shouldn't have to wait any longer.

¶ 33 With record support specifically stemming from the time father's new treatment plan was in place, the court considered father's inability to make significant change during the proceeding. *D.L.C.,* 70 P.3d at 588-89. The court also considered the young children's mental and emotional conditions and needs in this EPP case and looked to provide permanency as expeditiously as possible. We therefore perceive no error in the court's conclusion that father couldn't become fit within a reasonable time.

## IV. Disposition

¶ 34 The judgment is affirmed.

JUDGE BROWN and JUDGE YUN concur.